## FIRST NATIONAL BANK OF CLEVELAND *v.* SHEDD.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

Submitted January 24, 1887. — Decided March 28, 1887.

In two suits for the foreclosure of two mortgages of an insolvent railway, which had, by amendments and crossbills, become practically consolidated, the two sets of trustees, acting in harmony and in good faith, and with the approbation of the holders of a majority of the bonds issued under each mortgage (but against the wishes and objections of persons holding a minority of one of the issues as collateral, and contesting the priority of lien as to some of the property and the legality of some of the issues of bonds), procured the entry of a decree which ordered a speedy sale of all the property covered by either or both mortgages, as being for the best interest of all concerned, but left the conflicting claims as to the priority of lien and the amount of bonds issued to be settled by a subsequent decree or decrees. *Held*, that the court below had power to make this decree; that it was a final decree from which an appeal could be taken to this court; and that it was right.

THIS was a motion to dismiss, united with a motion to affirm. The case is stated in the opinion of the court.

*Mr. Francis Rawle, Mr. D. T. Watson* and *Mr. George T. Bispham* for the motion.

*Mr. John Dalzell* and *Mr. R. B. Murray* opposing.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The facts on which these motions rest are as follows: The Shenango and Allegheny Valley Railroad Company is a corporation organized under a charter granted by the state of Pennsylvania to build and operate a railroad from a point of intersection or junction with the Erie and Pittsburgh Railroad, in the township of West Salem, in the county of Mercer, to Bear creek, in the county of Butler. In March, 1869, the directors of the company resolved to issue bonds to the

amount of $1,000,000, and secure them by a mortgage or deed of trust to Henry Rawle, trustee, on that portion of its road "constructed and to be constructed between the western terminus thereof at its junction with the Erie and Pittsburgh Railroad in West Salem township, Mercer county; and a point in Butler county forty miles southeastwardly from said western terminus, and to be denominated a first mortgage." Under this authority a mortgage or trust deed was actually executed to Rawle, as trustee, not only on this forty miles of road, with its rolling-stock and appurtenances, but also upon "any lateral or branch roads, with their appurtenances, that may hereafter be constructed by or come into possession of the company along the line of the afore mentioned forty miles of main line or connected therewith; all of which things are hereby declared to be appurtenances and fixtures of the said railroad, and also all franchises connected with or relating to the said railroad, or the construction, maintenance, or use thereof, now held or hereafter acquired by the said party of the first part [the company], and all corporate and other franchises which are now or may be hereafter possessed or exercised by the" company. This mortgage was duly recorded, and all the bonds authorized were issued thereunder.

By an act of the legislature of Pennsylvania, approved April 14, 1870, the company was authorized "to so extend their eastern terminus as to connect with the Allegheny Valley Railroad, and to so extend the western terminus as to connect with any other railroad;" and by another act, approved March 7, 1872, "to construct three branches from their railroad as may be necessary and convenient for the development and transportation of coal, ore, limestone, and other minerals in the vicinity of their railroad, provided the said branches shall not exceed a distance of ten miles from the main line of said company."

The main line of the road was afterwards extended from its eastern terminus to the Allegheny Valley Railroad on the east side of the Allegheny River, and from its western end to the Atlantic and Great Western Railroad near the town of Greenville, making the entire length of that line forty-seven

miles. The company also built sundry branch roads, and on the first of July, 1877, it executed another mortgage or deed of trust to John H. Devereux, trustee, to secure another proposed issue of $1,000,000 of bonds. This mortgage covered "the entire railroad, built and to be built, . . . from its junction with the Atlantic and Great Western Railroad . . . to the Allegheny Valley Railroad on the east side of the Allegheny River, together with all its branches, extensions, side tracks, switches, and turn-outs, built and to be built, and also all the lands, rights, franchises, and appurtenances thereto belonging, .. . . and also all the corporate rights and franchises of said railroad company;" but it was expressly made "subject to a previous mortgage on forty miles of the northwestern end of the railroad aforesaid and its appurtenances executed to Henry Rawle, trustee."

Under this mortgage $200,000 of bonds were issued, and $175,000 in addition were placed with the following parties as collateral security for the following sums:

| | | | |
|---|---|---|---|
| 1. First National Bank of Cleveland, O. . . | $64,000 | to secure | $30,000 |
| 2. Second National Bank of Erie, Pa. . . . | 60,000 | ,, | 35,000 |
| 3. First National Bank of Greenville . . . | 22,000 | ,, | 20,000 |
| 4. Mahoning Nat. Bank of Youngstown . . | 16,000 | ,, | 10,000 |
| 5. Wick Brothers & Company . . . . . . . | 5,000 | ,, | 2,500 |
| 6. Thomas H. Wells . . . . . . . . . . | 8,000 | ,, | 5,000 . |
| In all — bonds . . . . . . . | $175,000 | to secure | $102,500 |

On the 15th of March, 1884, Charles L. Young and Henry Tyler, subjects of Great Britain, claiming to be the owners of the $200,000 of bonds issued under the Devereux mortgage, filed their bill against the Railroad Company in the Circuit Court of the United States for the Western District of Pennsylvania to have a receiver appointed. This was done on the same day the bill was filed, by the appointment of Thomas P. Flower receiver, and he was at once authorized to borrow $100,000 upon his certificates, to be used in the payment of wages, interest, taxes and other preferred claims.

On the 1st of May, 1884, Devereux, as trustee under the second mortgage, filed his bill against the company in the same court, to foreclose his mortgage and asking the appoint-

ment of a receiver. To this the company filed an answer, June 26, 1885, substantially admitting all the averments in the bill, and setting forth the appointment of Flower as receiver in the suit of Young & Tyler.

On the 6th of June, 1885, Rawle filed a petition in the suit of Young & Tyler, asking permission to sell under his mortgage, but on the 31st of July, 1885, the court, although of opinion that "an early sale of the railroad as an entirety would undoubtedly conduce to the benefit of its creditors," postponed the order asked for until a sale could be made under both mortgages, by the two trustees acting conjointly.

On the 5th of September, 1885, Devereux, by leave of the court, filed an amended bill, to which, in addition to the railroad company, he made Rawle, trustee, Flower, the receiver, The British and South Wales Railway Wagon Company (Limited), The Union Rolling Stock Company (Limited), and William A. Adams, defendants. In this amended bill it is averred that the Devereux mortgage is a first lien on all the main line of the company excepting only "forty miles of said main line extending southeasterly from its junction with the Erie and Pittsburg railroad at Shenango," and "upon all the lateral branches of said road." The whole line, including the lateral branches, is stated to be seventy-five miles in length, and the part on which the Devereux mortgage is the first lien thirty-five miles. The prayer is for an account of the amount due on the bonds outstanding secured by the mortgages to Devereux and Rawle respectively, the amount due on the receiver's certificates issued by Flower, the expenses of the receivership, and certain car trust contracts, and also for a determination of the respective priorities of all the incumbrances and charges on the property, and for a sale of the mortgaged promises, free of liens, to pay the amounts found due in the order of their priority. This bill also prays the appointment of a receiver to take charge of the property and manage the business during the pendency of the suit. The British and South Wales Railway Wagon Company, The Union Rolling Stock Company, and William A. Adams answered, setting up certain car trust contracts which are imma-

terial on the present appeal. Devereux, the trustee, having died pending the suit, John M. Shedd was duly appointed in his place and substituted for him as complainant, April 16, 1886.

On the 18th of May, 1886, The First National Bank of Cleveland, The Second National Bank of Erie, The First National Bank of Greenville, The Mahoning National Bank, Wicks Brothers and Company, and Thomas H. Wells appeared in court, and on the 10th of June, 1886, were permitted to intervene in the suit, *pro interesse suo*, because of averments in their petition, that Shedd, the substituted trustee, "is committed to a course, and is acting in a manner which is calculated to injure them in their security, in this, to wit, that there is on foot a certain scheme for the reorganization of said railroad company, which contemplates a 'united and friendly foreclosure' and sale of the entire road under the two mortgages named in plaintiff's amended bill, and this action now pending is to be used as the means of carrying forward said reorganization scheme in connection with certain proceedings to be instituted upon the mortgage, in which Henry Rawle is named as trustee, and mentioned in plaintiff's said bill; that there are certain questions as to the extent of the lien of the said Rawle mortgage, and the number of the bonds outstanding, and the amount that is due thereon, which should be determined in this action, and which the petitioners are informed and believe that the said Shedd, trustee, does not intend to raise, and which, petitioners are informed and believe, if raised, will be determined against the validity and amount of a large portion of said bonds, but if left to the claim of the holders thereof and their trustee would amount to over one million dollars, ($1,000,000,) and be made a charge and lien upon said premises superior to that of the bonds held by the petitioners, and there are also disputes as to the extent of the liens of the two mortgages, the said Rawle claiming a first lien upon the entire road, and the petitioners claiming that it is only a lien upon forty (40) miles of the main line, and that theirs is a first lien upon the entire balance. That petitioners are informed and believe that it is a part of said scheme to which said Shedd,

trustee, is committed to have the interest in said railroad covered by the conveyance to Devereux sold without a determination of these questions, and by so doing the petitioners say that the value of their security will be greatly diminished, first, by not being able to know the exact extent thereof; and, secondly, by being unable, by reason of the uncertainties existing as to the extent of their lien, to protect the property from being sacrificed upon sale, and as to these matters they beg leave of the court to refer for a fuller statement of the same to their pleadings allowed by the court to be filed in case No. 17, in equity, May term, 1884," the Young & Tyler suit.

On the 12th of June, 1886, Rawle filed a cross-bill, in which, after setting up the mortgage in his favor and the default of the company in the payment of interest on the bonds secured thereby, he asked to be permitted to sell the mortgage property free of all liens, and to bring the proceeds into court, to be distributed in accordance with the respective liens and priorities of the parties.

On the 18th of June, 1886, the railroad company answered both the amended and cross-bills, and, leaving the parties to litigate among themselves as to their respective rights under the mortgages, joined in the prayers that the property might be sold.

On the 26th of June each of the intervenors filed an answer to the cross-bill of Rawle, setting up their respective claims and insisting that the lien of his mortgage should be confined to the forty miles of main line included in the resolution of the company authorizing its execution. It is also insisted that the amount actually due upon the outstanding bonds is much less than $1,000,000, for reasons which are specially stated, and "that owing to the disputes existing as to the amount of the first-mortgage bonds outstanding, and the extent of the lien thereof, and the dispute as to the extent of the lien of the second-mortgage bonds, and as disputes have arisen as to the amount and validity of the receiver's certificates, it is necessary, in order to protect its rights as a lien creditor, to have a court of competent jurisdiction to determine the amount of said bonds outstanding, and the amount due thereon and the

extent of the lien thereof, as well as the amount and the extent of the lien of said second-mortgage bonds, as well as the amount and validity of the said certificates before a sale of the said property."

"And the respondent respectfully represents, that, if the property of the defendant company is sold before the validity and extent of said liens are judicially determined, bidding will be deterred on account of the risk and uncertainty, and the property will be in great danger of being sacrificed at said sale.

"Wherefore your respondent prays that an accounting may be had and taken in the premises, that the amount of the bonds outstanding in the hands of *bona fide* holders for value may be determined; that the extent of the lien of each may be judicially determined, and upon the final determination of the matters, and not before that an order of sale may be issued to sell the mortgaged premises, and for such other and further relief as may be just and equitable in the premises and to your honors shall seem meet."

After these answers were in, both Shedd and Rawle, the trustees, moved the court for leave to sell the mortgaged property under their deeds of trust, and upon these motions, on the 13th of July, the district judge, sitting in the Circuit Court, filed an opinion, in which the circuit judge concurred, as follows:

"When this case was formerly before us, upon the petition of Henry Rawle, trustee, for leave to sell the Shenango and Allegheny Railroad under the power of sale in the mortgage to him, we expressed the opinion that an early sale of the railroad as an entirety would undoubtedly conduce to the benefit of all its creditors. This opinion is greatly strengthened by what has since transpired. Under the operation of the receivership the financial condition of the company is constantly growing worse, and it is now entirely clear that the best interests of all parties concerned will be promoted by a speedy sale. In this view the creditors generally concur. The controlling objection to the sale as formerly proposed has been removed by the joint application of the trustees under

the two mortgages to sell by virtue of the powers of sale con- ferred upon them respectively, they agreeing to unite in the sale so as to assure to the purchaser an undoubted title to the whole property, and to so conduct the sale as to secure the highest price attainable.

"We have no hesitation in finding in the case of the Devereux-Shedd mortgage that there has been a default in the payment of interest coupons for more than eighteen months, and that by the election of one-tenth in amount of the bondholders the principal of the bonded indebtedness has become due and payable, and that by reason thereof the trustee is entitled to foreclose the mortgage or exercise his power of sale.

"The sale by the trustee will be under the control and sub- ject to the approval of the court, and we can see to it that no unfair advantage is taken of the minority of the bondholders by reason of any improper combination among the majority or otherwise.

"The court having reached the conclusion that the mort- gage trustees should be permitted to exercise their powers of sale under the direction of the court, it is to be hoped that the parties can speedily agree as to the manner in which the property shall be offered to sale; but if they do not agree we will hear them further upon that point before a decree is framed."

Pursuant to this decision a decree was entered on the 14th of October, as follows:

"This cause came on to be heard . . . upon a motion by and on behalf of the said John M. Shedd, trustee, and also by and on behalf of the said Henry Rawle, trustee, that the court shall order and decree a sale of all and singular the property, real, personal, and mixed, of the Shenango and Allegheny Railroad Company, freed and discharged from all liens and incumbrances whatsoever; and also upon a motion made by and on behalf of the said John M. Shedd, trustee; and also by and on behalf of the said Henry Rawle, trustee, to the effect that each trustee shall be authorized and empow- ered under and in accordance with the terms of his mortgage

to proceed and sell all and singular the property, real, personal, and mixed, covered by or included within his said recited mortgage, and upon a motion by and on behalf of both trustees for a sale of the entire property of the defendant company as incumbered and unable to pay the liens upon it, and so that the proceeds thereof may be distributed among the creditors entitled thereto. Due notice having been given to all parties in interest of these motions, and that the same would be heard, and the same having been already heard, all the parties in interest appearing by counsel and taking part in the argument, and the various papers and proceedings and record in the case of *Young et al.* v. *The Shenango and Allegheny Railroad Company* now pending at No. 17, May term, 1884, of this court, as well as also all papers, affidavits, and other proceedings in this case and other documents, were produced, heard, and considered by the court in support of the said motions, and the court, after consideration, being of the opinion that it was to be the best interest of all parties concerned that the said railroad and all the property of the Shenango and Allegheny Railroad Company should be sold as speedily as possible; and having filed an opinion to that effect, and the parties in interest being unable to agree upon the form of a decree directing said sale, and the court having fixed the 30th day of September, A.D. 1886, for settling the form of a decree, and counsel for all the respective parties having appeared and having been duly heard, and the court having considered the premises, do now order, adjudge, and decree, as follows:"

Then follows a detailed statement of all the property of the company, describing particularly its main line and branches, and also its lands, rolling-stock, and other property. There is then a finding of the execution of the two mortgages to Rawle and Devereux, the amount of bonds originally issued thereunder, and a default in the payment of interest such as would entitle the several trustees to take possession and sell under the powers vested in them respectively, and an adjudication that the trustees are severally "entitled to proceed and foreclose the said mortgage." It is also found that the mortgages

are each valid and existing liens on so much of the property
" as was thereby lawfully conveyed to the said respective trus-
tees, and which thereafter became vested in the said trustees
respectively as after-acquired property, according to the terms
of said mortgages, or either of them;" that all of the original
issue of bonds under the Rawle mortgage was outstanding,
with interest coupons attached, from October 1, 1884, and
under the Devereux, $375,000 and all the interest warrants
from their date, but there is no finding of the amount actually
due on either of the issues. It is also found that there are
$155,849,87 of receiver's certificates outstanding on which
interest is payable at the rate of six per cent. per annum from
their respective dates, and that these, " together with the costs,
charges, and lawful expenses in this cause, and the costs,
charges, expenses of the liabilities of the receivership, includ-
ing the costs in the case of *Young* v. *The Shenango and Alle-
gheny Valley Railroad Company* in this court, and all just
and proper compensation, expenses, and allowances to the
said receiver and the trustees under the said mortgages, and to
any of the parties to the said cause, are entitled to be paid
out of the proceeds of the . . . sale in the first instance,"
and in preference to the bondholders.

The decree then proceeds as follows:

"(8) And this court does further find, adjudge, and decree
that all the property, real, personal, and mixed, of the said
Shenango and Allegheny Railroad Company is subject to the
lien of either the said mortgage to the said Henry Rawle,
trustee, or to the said mortgage to the said John H. Devereux,
trustee, as also to the outstanding receiver's certificates, and
that there are conflicting claims in reference to the priority of
liens and their extent, and that there are conflicting claims
between the said mortgagees and some of the bondholders in
reference to the number of bonds legally outstanding and un-
paid under the said respective mortgages to the said Henry
Rawle, trustee, and to the said John H. Devereux, trustee,
and, also, that there are conflicting claims in reference to the
amounts of money due on the said respective bonds outstand-
ing under the said mortgages which the holders thereof are

entitled to receive; and this court also finds that the Shenango and Allegheny Railroad Company is insolvent, and that it would be to the best interests of all parties concerned that the said property, real, personal and mixed, of the said defendant company should be sold; and it appearing to the said court that such sale by this court of the said property is prayed for under the amended bill filed by the said John M. Shedd, trustee, and also in the cross-bill filed by the said Henry Rawle, trustee, this court do now, upon motion of the solicitors for the said John M. Shedd, trustee, and also upon motion of the solicitors of the said Henry Rawle, trustee, the solicitors for the company and the receiver acquiescing herein, do now order, adjudge and decree that the said Henry Rawle and John M. Shedd be, and they are hereby, appointed special commissioners by this court to make sale of all and singular the property, real, personal, and mixed, including the franchises of the said Shenango and Allegheny Railroad Company; said sale shall be on the 25th day of January, 1887, at Shenango, the junction of the Shenango and Allegheny Railroad with the Atlantic and Great Western, now New York, Pennsylvania and Ohio Railroad, near Greenville, Mercy County, Pennsylvania, at twelve (12) o'clock noon, and it shall be at public auction, and the sale shall be made to the highest and best bidder, and report thereof made to this court."

It is then ordered that the whole property be sold as an entirety, at not less than $625,000, and that upon a confirmation of the sale the purchaser be entitled to a conveyance freed and discharged of the lien of the mortgages, receiver's certificates, costs, expenses, &c., and the conclusion is as follows:

"13th. All disputes and controversies between the two mortgage trustees, the said Rawle and the said Shedd, or the bondholders under the said two mortgages, touching the extent of the lien of the said mortgages, respectively, or the priority of the lien of the said mortgages, respectively, as well as all questions concerning and touching the amounts due bondholders, respectively, under the said two mortgages, are hereby expressly reserved for future consideration and determination unaffected by anything in this decree."

From this decree the intervenors alone have appealed, and that appeal Shedd and Rawle move to dismiss because it was "taken from an interlocutory decree or order of sale and not a final decree." With this motion is also united a motion to affirm under Rule 6, § 5.

The motion to dismiss is overruled, but the motion to affirm is granted. The appeal in its present form brings up for review the single question of the propriety of ordering a sale before the rights of the parties under the several mortgages have been fully ascertained and determined. All parties, including the mortgage trustees, are satisfied, except these appellants, who have been allowed to intervene *pro interesse suo*, and who represent but a small minority of the mortgage indebtedness. The only substantial issues presented by their answers relate to the extent of the priority of the lien of the Rawle mortgage, and the amount due on that issue of bonds. They do not deny that the property must in the end be sold under the mortgages, and, while insisting that Rawle can only enforce his lien to the extent of the past due interest on that issue of bonds, there is no offer to provide means for the payment of that interest, and there is no pretence that the part of the property covered by his mortgage, whatever it may be, can be sold to advantage otherwise than as an entirety. Neither is it claimed that the property covered by the Devereux mortgage alone can be sold separate from the rest as advantageously as if the whole road and its branches were offered together. The entire opposition to a sale now rests on the claim that it is necessary, in order to protect the rights of these intervenors as lien creditors, that all disputed questions should be settled, or "bidding will be deterred on account of the risk and uncertainty, and the property will be in great danger of being sacrificed."

Against this is the fact that both the trustees agree in the opinion that the interests of their respective beneficiaries will be best subserved by an immediate sale, in which the creditors generally concur. In addition to this, the court finds, and the evidence shows, that the financial condition of the company under the administration of the receiver is continually grow-

ing worse. The receiver's certificates have increased since March 15, 1884, when the first loan was authorized, from $100,000 to nearly $156,000 in October, 1886, and the receiver, in his answers, says, that from his knowledge "of the condition of said railroad company and its property and finances, he verily believes it would be for the best interest of all parties concerned, including the stockholders, bondholders, and creditors, . . . that all its property should be sold as soon as possible, and in such manner as to give the purchasers thereof an unincumbered title thereto." This also was the opinion of the court when Rawle made his application in the suit of Young & Tyler for leave to sell, and which was then denied because the trustee of the Devereux mortgage did not unite in the application, and the court was satisfied that a fragmentary sale would operate injuriously upon the rights of all who were interested in securing the largest price for the property to be sold.

Against all this we do not find a word of evidence in the record, so that the only question is whether the law requires that a sale should be postponed against the wishes of the mortgage trustees and a large majority of the bondholders, simply because these intervenors, representing a minority interest, object. As a rule the trustee of a railroad mortgage represents the bondholders in all legal proceedings carried on by him affecting his trust to which they are not actually parties. There is here no evidence to show fraud or unfairness on the part of the trustees. The company is satisfied with what they are doing, and so are all the bondholders under the Rawle mortgage, and a majority of those under that to Devereux. As was said in *Shaw* v. *Railroad Company*, 100 U. S. 605, 612: "Railroad mortgages are a peculiar class of securities. The trustee represents the mortgage, and in executing his trust may exercise his own discretion within the scope of his powers. If there are differences of opinion among the bondholders as to what their interests require, it is not improper that he should be governed by the voice of the majority acting in good faith and without collusion, if what they ask is not inconsistent with the provisions of his trust." Here

the majority want an immediate sale. In this the trustees both agree, as does the railroad company itself. There is no evidence whatever of a want of good faith in any one. The court below, having the practical workings of the receivership under its own eye, did not hesitate to say that "it is now entirely clear that the best interests of all parties concerned will be promoted by a speedy sale," and we see nothing to the contrary.

Of the power of the court to make such an order in a proper case we have no doubt. The property is in the possession of the court and is depreciating in value by the accumulation of receiver's indebtedness, while the litigation between the parties as to their respective interests in it is going on. There cannot be a doubt that the whole ought to be sold together. If in the end it shall be found that the Rawle mortgage covers only a part, it will be as easy to fix the rule for dividing the proceeds equitably between the two securities after a sale as before, and there is nothing in the decree as entered to interfere in any way with such a distribution.

Upon the facts as presented to us we are entirely satisfied that the decree of the court below was right, and it is consequently affirmed.

*The motion to dismiss is overruled and the decree affirmed.*