# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed January 7, 1897.

THOMAS J. CANNON

VS.

BRUSH ELECTRIC COMPANY, ET AL.

*Skipwith Wilmer* for Brush Electric Company and others.

*Charles Marshall* for receivers.

*Arthur George Brown* for Mercantile Trust and Deposit Company.

STOCKBRIDGE, J.—

This is an application upon the part of certain alleged stockholders and bondholders of the United States Electric Power and Light Company, asking that the property now in the hands of the receivers be immediately sold, and that the proceeds of such sale be brought into this Court for final disposition upon the termination of the litigation.

The petitioners represent more than a majority of the stock of the supposed corporation, and the large majority of the outstanding bonds issued by it. The application is opposed by the plaintiff and others, who together are the holders of the minority of both stock and bonds, and also, though upon different grounds by the trustee under the mortgage given to secure the bonds of the supposed company.

The bill in this case was filed by the plaintiff, not against the United States Electric Power and Light Company as a corporation, but as against various parties who are or were supposed to be the stockholders interested therein, upon the theory that the attempted incorporation of the United States Electric Power and Light Company was ineffectual and void, and that therefore the parties who had supposed that they had subscribed to or purchased the stock of the corporation were in fact conducting a partnership business and not engaged as a corporation. The prayer of the bill asked the appointment of receivers and ultimately the sale of the property. Receivers were appointed, and now the petition for the sale comes not from the original plaintiff, but from the defendants, and is opposed at this time by the plaintiff, who asked that specific relief in his bill as the ultimate conclusion of the case.

It is perfectly manifest, so much so that the citation of authorities is unnecessary, that in order to make an effectual sale all parties in interest, or if a sale be ordered in advance of a determination of who the parties in interest actually are, all, who by any principle, could have an interest, must be parties to a cause before a valid sale can be made or authorized. It would be idle for a Court of Equity to decree a sale in a condition where parties having a possible interest were not parties to the cause, and, therefore, not in a

position to be bound by any decree passed. The original bill did not make the United States Electric Power and Light Company a party as a body corporate, because it specifically denied that it had any valid corporate existence, and that question is, and must be the turning point in this case. While it has been elaborately argued upon the part of the original plaintiff, that the United States Electric Power and Light Company is not a corporation, yet in the form in which the pleadings of the case now stand, it would be scarcely just for the Court to attempt to pass upon this phase of the case.

After the filing of the bill and answers by the defendants named in the bill, receivers were appointed, and it is an acknowledged fact in the case that those receivers took possession of the property of the partnership or corporation, whichever it is, and have conducted the business of the same ever since the 17th of September last, yet not until the argument upon this petition had been begun, was there any request or application in the name of the supposed corporation to be made a party to the suit, and clearly until the corporation was so made a party to the suit any sale which might be ordered by the Court would, in the event of a final determination that the defendants were not partners, but stockholders in a corporation, be nugatory and void, since the legal creature which was possessed of the title to the property at the time of the appointment of the receivers was not in a position where it would be bound by the sale which might have been ordered.

During the hearing, application was made to the Court in the name of the United States Electric Power and Light Company as a body corporate for leave to appear and file its answer to the bill, adopting the answer of certain of its co-defendants, assenting to the proceedings had up to that time, and consenting to the sale prayed for by the petitioners, and though in the form presented the Court declined to allow the filing of such answer, it intimated to the counsel presenting it that when presented in regular form it would be proper that such answer should be admitted and filed, not to be construed, however, in any manner as being an adjudication upon the question of corporation vel non. Assuming that this proffer so made during the hearing

either has, or shortly will be put in perfected form, it is but just that the main question involved in the petition and answers should be considered and determined.

In opposition to the petition it has been elaborately and earnestly argued that a Court of Chancery is without power to grant this application upon a variety of grounds; and in the second place, that even if it has the power, the present is not the time for such exercise of it by the Court.

With respect to the first of these propositions, (as to the power of a Court of Chancery) it is undoubtedly true that the early adjudications respecting the rights and powers of receivers and of Courts in the control of receivers, indicated a limited scope, and was rarely, if ever, extended beyond the power for which such receivers were originally appointed, and no better illustration of this can be found than in the elaborate and able opinion delivered by Mr. Justice Nelson in the case of Wiswall vs. Sampson, 14 Howard, p. 52; but in the forty years which have passed since the delivery of that opinion, and in the phenomenal increase in cases in which the aid of Courts of Chancery has been invoked to appoint receivers and to conduct business through the medium of receivers, there has gradually come somewhat of a departure from the earlier doctrines. By the appointment of a receiver the property itself, which is the subject matter of the litigation, passes in custodia legis, and since it is a fundamental principle of equity to avoid the multiplicity of suits so far as consistent with established legal principles, it will, when all persons or bodies corporate who in any event can have an interest in the property, are parties to the proceedings, adopt the relief in such form as shall seem to it best for the proper preservation of the interests of all parties.

The true doctrine of today seems to be that which is embodied in the opinion of the Supreme Court of Vermont in the case of Smith et al. vs. Burton et al., 67 Vt. 514 (32 Atlantic Reporter 468), where the Court, citing with approval Section 192 of High on Receivers, says: "A Court of Equity appointing a receiver to take possession of property pending a litigation concerning the rights of the parties thereto is vested with the power of sale of

property in the receiver's hands whenever such course becomes necessary to preserve the rights of all parties." In that case, as in this, there was a dispute, not as to a fact of incorporation, but as to who was entitled to the property, which consisted of improved property in the village of St. Albans, and pending a determination of the rights of the parties, receivers were appointed to take charge of it and protect the property, and in that case, as in this, an application was made for the sale of the property pending a final determination of the questions involved. The same principle is to be found in the opinion delivered by Mr. Chief Justice Waite, in the case of the First National Bank of Cleveland vs. Shedd, 121 U. S. 74, where there was a conflict of two suits for the foreclosing of two mortgages of an insolvent railway. There the trustees, with the approbation of the holders of a majority of the bonds issued under such mortgage, but against the wishes and objections of persons holding a minority of one of the issues as collateral and contesting the priority of lien as to some of the property, and the legality of some of the issues of bonds procured the entry of a decree which ordered the speedy sale of all the property covered by each or both of the mortgages, as being for the best interests of all concerned, leaving the conflicting claims as to the priority of the liens and the amount of bonds issued to be settled by a subsequent decree or decrees. In that case one of the grounds for opposing the sale was that bidders would be deterred on account of the risk and uncertainty of a sale made upon an interlocutory order, and before a final determination of the rights of the contending parties, and as a result the property would be in great danger of being sacrificed, but in such a case, the Supreme Court said, "Of the powers of the Court to make such an order (that is the order of sale) in a proper case, we have no doubt."

It seems clear, therefore, without further citation of authorities, and they could be multiplied to the same effect, that as to the power of the Court to order a sale of the property now in the hands of the receivers in this case, there can be no doubt, leaving the question of relative rights and liabilities for the final determination of the cause.

But while a Court of Chancery undoubtedly has this power it is a power not to be used in advance of final determination, except to meet some imperative exigency. It is a power to be used in the discretion of the Chancellor, within certain clearly defined legal bounds, and although in cases of this character it has sometimes seemed that each case stands upon its own particular facts, there are certain well-established principles that a Court of Equity will be loath to depart from. As was said by Mr. Justice Harlan, in the case of Mellen vs. The Moline Iron Works, 131 U. S. 369, "whether the conditions of the property was such as to require for the protection of the parties that it be sold was a matter for the Court in its discretion to determine." To justify a Court of Equity in ordering a sale, pending litigation, and in advance of the determination of the rights of the parties to the cause there must be some great and pressing necessity, and such necessity must not be inferential merely, but as some of the cases put it, must be clearly demonstrated by competent proof.

Dixon vs. Rutherford, 26 Ga. 149.

It is of course obvious that where the property which is the subject matter of the trust in the hands of the receivers is in its nature perishable, such as a cargo of fruits, vegetables or fish, that the preservation of any corpus of the estate at all, is dependent upon its prompt sale and conversion into cash by the receivers or trustees, as the case may be, and by anology it has been held, as in the case of the First National Bank of Cleveland vs. Shedd, already referred to, that where "the property is in the possession of the Court and is depreciating in value by the accumulation of receivers indebtedness, while the litigation between the parties as to their respective interests in it is going on, a sale by such interlocutory proceedings is fully justified."

But this power is decided in all the cases as "one of an extraordinary character and should never be exercised except in very plain and unquestionable cases. Indeed it should plainly appear beyond any reasonable doubt, either by proof or from the very nature of the case itself that a sale must inevitably be decreed on a final hearing to justify the passing of the interlocutory order."

Cornell vs. McCann, 37 Md. 99.

In view of this salutary rule, and indeed as a natural corrollary from it,

it must follow that to justify a sale of such interlocutory character it should not only appear that the sale is inevitable as the final conclusion of the litigation, but that at the time of the application there are such conditions or circumstances as to render it peculiarly proper and appropriate.

There is not anything before the Court in the way of direct proof to show the urgency or necessity for a present order of sale and the statements made in the argument of counsel do not necessarily, however eminent the counsel may be, supply the place of legal proof. That which most nearly approximates legal proof are the statements not made under oath but admittedly correct of the results of the business as conducted since the 7th of September last, by the present receivers. The showing thus made is substantially as follows:

Gross receipts of the receivers
from the time of their appointment to January 4th, 1896 .....................$5,430.75
Expenditures during the same period ..................... 5,002.15

Leaving a cash balance on hand as of that date of..... $428.60

There is also stated to be due the receiver $1,833.59, of which sum $1,492.85 was for current furnished during the month of December last and not yet paid for. If now we assume that all the accounts due to the receivers prior to the month of December are bad, and that of the current and service furnished during the month of December, there will be a loss on accounts to the extent of 10 per cent., there will still be received by the receivers for their December business $1,342.57, and if to this be added the cash balance of $428.60 before mentioned, the receivers will have in hand $1,771.17, with outstanding liabilities of the receivers of $646.53, or a net balance of $1,124.64, to be applied to the payment of the insurance now about to expire upon the property of the Company or for moderate repairs or taxes. .

It was urged in argument with much force that Courts of Chancery have subjected themselves to proper and legitimate criticism by attempting, under the guise of receivers, to conduct for a considerable period of time commercial enterprises, such as the operation of railroads, water works, manufacturing and mercantile business, and the power of Courts of Chancery to continue the conduct of such business is one which has been much questioned of late, and with seemingly good reason. But there is an important difference between the conduct of a business for an indefinite period and the conduct of it for a limited period, holding it together for the benefit of whoever may be legally entitled thereto, pending the ascertainment of legal rights, and assuming that the exhibition which has been made of the business of the receivers is correct it can not be said to demonstrate such a depreciation of value of the property in the hands of the receivers by the accumulation of receiver's indebtedness as to make apparent the necessity at this time for the sale of the property under an order interlocutory in its character. The business, as shown, can not fairly be termed a profitable one, since in addition to the items mentioned, it must of course ultimately defray the items of current, as well as back, taxes, the interest accrued and to accrue upon its bonded indebtedness, and the compensation of the receivers. But neither is it necessary to justify a Court of Equity in continuing temporarily the conduct of the business, that there should be shown a large and growing profit; what is necessary rather is that it should be apparent that there is no substantial depreciation of value, either from the nature of the property itself, or from a constantly increasing volume of receivership indebtedness, and when this appears it seems the exercise of a wise discretion to retain the property under the control and subject to the order of the Court without sale for a reasonable time, for the determination of the important questions involved in the litigation.

The period of three and one-half months for a case of this character, and for a business of this nature, does not seem to the Court such reasonable time as to warrant at this juncture an assumption of lack upon the part of counsel of all due diligence in forwarding the case to final conclusion, or to necessarily demonstrate the earning capacity, or the reverse, of the business in question.

For these reasons the prayer of the petition now under consideration, asking an order for the immediate sale, will at this time be refused.