## In re SCHOMMER et al.
### No. 7234.

Circuit Court of Appeals, Seventh Circuit.
May 21, 1940.

---

**312**

Charles P. Schwartz, of Chicago, Ill., for petitioners.

Tenney, Harding, Sherman & Rogers, Wilson & McIlvaine, Gottlieb & Schwartz, Johnstone, Peters & Dixon, John W. Kearns, David O. Dunbar, Alden, Latham & Young, Mayer, Meyer, Austrian & Platt, Edwin H. Cassels, David O. Dunbar, Campbell, Clark & Miller, Pam, Hurd & Reichmann, and Poppenhusen, Johnston, Thompson & Raymond, all of Chicago, Ill. (William J. Friedman, Henry F. Tenney, J. F. Dammann, John W. Kearns, and Carl R. Latham, all of Chicago, Ill., of counsel), for respondent.

William J. Froelich, of Chicago, Ill. (Thomas Dodd Healy, of Chicago, Ill., of counsel), for Walter A. Shaw.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition for mandamus, to require respondent, as Judge of the District Court of the Northern District of Illinois, to permit petitioners to intervene in certain consolidated suits there pending for the reorganization of the property of the Chicago Railways Company, Chicago City Railway Company et al., and for foreclosure of mortgages on the property involved—respondent having denied leave to intervene. The petition submitted in connection with the intervention sought is presented as part of the petition here. This court permitted the filing of the petition for mandamus, and alternate writ directed to respondent, who thereupon filed answer to the petition and the cause is here upon such petition and answer. This court granted leave to interested parties to file objections which have been filed jointly by a number of trustees representing various interests. Also, objections have been filed by a court adviser appointed by the District Court.

The proceedings in the District Court have extended over a period of many years, resulting in much litigation as is evidenced by fourteen record volumes containing more than 16,000 pages of the rulings, decisions and actions of respondent submitted by him as a part of his answer to the petition.

In view of the conclusion which we have reached, there is no occasion to relate more than a few of the salient steps of the proceedings. On December 15, 1926, a receiver was appointed for the Chicago Railways Company, and on February 2, 1927, the Harris Trust and Savings Bank, a mortgage trustee, was granted leave to intervene and file its mortgage foreclosure. The receivers continued in possession and operated the property until 1930. On July 7, 1930, receivers were appointed for the Chicago City Railway Company, and shortly thereafter, the First National Bank of Chicago, as a mortgage trustee, was permitted to intervene and file its foreclosure action in said suit. Each of the properties of which the court thus acquired jurisdiction was part of what is known as the Surface Lines Transportation System of

the City of Chicago. In 1930, and at subsequent times, in fact to the present time, a continuing effort has been made to reorganize such properties and others which later came under the jurisdiction of the court. The early efforts in this respect seem immaterial to the question with which we are now concerned. In May, 1931, a decree of foreclosure was entered. On July 12, 1935, respondent appointed certain persons known as the Abbott Committee to formulate, and they did formulate and submit, a plan of reorganization to purchase the mortgaged properties. A public sale of the properties was had pursuant to the foreclosure decree and this plan on May 29, 1936. Various objections to the plan were overruled, and the sales confirmed subject to the purchaser's ability to negotiate an ordinance with the City of Chicago, as provided in the plan. Thus, the confirmation of the sale was tentative and conditioned upon the ability of the purchasers to meet legal requirements essential to the operation of a transportation system. It hardly need be mentioned that any plan of reorganization could not be made effective without agreement with the City of Chicago, so as to obtain a franchise, in place of the one long since expired, and also one that was satisfactory to the Illinois Commerce Commission, and in case the plan required the issuance of new securities, the consent and approval of the Federal Securities and Exchange Commission. From the time of the decree, tentatively approving the sale to the present, there has been on the part of those interested, what appears to have been an honest effort to amend the Abbott plan so as to make it agreeable to all interested parties.

On December 17, 1937, the respondent appointed what was designated as a court adviser, whose duties in a general way, were to assist and advise the court in an effort to solve the problem with which respondent was confronted. His compensation, fixed by the court, has been paid regularly since the time of his appointment. No question is raised as to his qualifications.

In addition to the mortgage trustees, there were before the court as parties, bondholders' committees representing substantially all the bonds secured by the mortgages, sought to be foreclosed. There were also junior mortgage trustees, as well as committees representing bonds secured by such mortgages. With this brief outline of the situation, we shall now consider the relief sought by petitioners.

We are requested to order respondent (1) to disapprove the sale and plan under which it was made and to order a resale within a short day to be fixed by this court, (2) to prohibit the payment of further fees to the court adviser and order the recovery of the fees already paid him, and (3) to allow petitioners to intervene to protect and enforce their rights under the foreclosure decrees of sale in accordance with the applicable principles to be determined by this court. In this connection, it seems pertinent to point out that the only relief sought in the District Court was by way of petition for leave to intervene for the purpose of attacking the order appointing the court adviser, and to seek a vacation of the order providing compensation for his services. No effort was made by petition to intervene or otherwise for the purpose of attacking the sale and plan under which it was made, or to enforce any rights by virtue of the sale decrees.

█ On the question of the right of petitioners to intervene, it seems material to consider their status. According to the petition here, the petitioners are owners of first mortgage bonds in the amount of $16,000, as follows: Schommer, a $1,000 First Mortgage Bond of the Chicago Railways Company, Horowitz, $5,000 in First Mortgage bonds, and Adelman, $10,000 First Mortgage bonds of the Chicago City Railway Company. No allegation is contained in the petition as to when, how, or in what manner the bonds were acquired, or the consideration paid for them. The record discloses, however, that neither Horowitz nor Adelman were the owners of any bonds. The former owns $5,000 of Certificates of Deposit for bonds of the Chicago City Railway Company purchased by him on August 19, 1939, and the latter, $10,000 of Certificates of Deposit for bonds of Chicago Railways Company purchased by him on August 8, 1939. All of these certificates of deposit represent bonds which had long been on deposit with the appropriate bondholders' committee. That these two petitioners, when they acquired such certificates, did so with knowledge that the bonds were on deposit, seems apparent from the fact that each certificate bore a stamp as required by an order of the District Court advising certificate holders of the deposit agreement, and also containing this statement: "By accepting this certificate, the

owner hereof assents to said plan of reorganization and agreement and amendment to the bondholders' protective agreement." There seems to be nothing in the record disclosing when or in what manner petititioner Schommer became the owner of her $1,000 bond.

Thus, it appears obvious that petitioners Horowitz and Adelman have been represented by a bondholders' committee with whom their bonds were on deposit and by the mortgage trustee and, that petitioner Schommer has been represented by the mortgage trustee. Under such circumstances, we do not believe petitioners are in any position to become parties by intervention for the purpose of attacking the actions of respondent. This is especially true of petitioners Horowitz and Adelman, who make no showing of good faith.

Even if we assume petitioners to be in good faith, however, we do not believe they are entitled to intervene as a matter of right. While not controlling, it is of some pertinency that the total of petitioners' certificates and bonds amounted to $16,000 out of a total first mortgage bond indebtedness of some $72,000,000. Two of petitioners were represented in the proceedings by a bondholders' committee, with whom their bonds were deposited, as well as by the mortgage trustee. The other petitioner was represented by the mortgage trustee. Under such circumstances, intervention is a discretionary matter. As was said in Shaw v. Railroad Co., 100 U.S. 605, 611, 25 L. Ed. 757: " * * * The trustee of a railroad mortgage represents the bondholders in all legal proceedings carried on by him affecting his trust, to which they are not actual parties, and whatever binds him, if he acts in good faith, binds them. * * *"

On the following page, the court said: " * * * The trustee represents the mortgage, and in executing his trust may exercise his own discretion within the scope of his powers. If there are differences of opinion among the bondholders as to what their interests require, it is not improper that he should be governed by the voice of the majority, acting in good faith and without collusion, if what they ask is not inconsistent with the provisions of his trust. * * *"

Again in Richter v. Jerome, 123 U.S. 233, on page 246, 8 S.Ct. 106, 112, 31 L.Ed. 132, the court said: " * * * As bondholders claiming under the mortgage, they can have no interest in the security except that which the trustee holds and represents. If the trustee acts in good faith, whatever binds it in any legal proceedings it begins and carries on to enforce the trust, to which they are not actual parties, binds them. [Citing cases.] Whatever forecloses the trustee, in the absence of fraud or bad faith, forecloses them. This is the undoubted rule."

In Palmer v. Bankers' Trust Co., 8 Cir., 12 F.2d 747, the court considered a railroad reorganization in connection with a foreclosure proceeding which, in many respects, is similar to the instant situation. Certain bondholders sought leave to intervene. The court held that intervention was a discretionary matter with the District Court. On page 754 of 12 F.2d, it said:

" * * * The mere fact that the judgment of petitioner differed from that of the trustee, and of nearly every one else connected with the litigation, has no tendency to show bad faith on the part of the trustee. Shaw v. Railroad [Co.], supra; First Nat. Bank v. Shedd, supra [121 U. S. 74, 7 S.Ct. 807, 30 L.Ed. 877]. Eighty-four per cent. of the bondholders requested the trustee to proceed to the entry of decree with this provision contained in it. It was the duty of the trustee, under the provisions of the mortgage, to obey this request.

* * * * * *

"It was incumbent on the petitioner, in seeking the aid of a court of equity, to show fully his status. But he refused to disclose the time when he became a bondholder, and, though he attacked the default which precipitated foreclosure of the refunding mortgage as having been fraudulently produced, he was yet willing to condone the fraud provided his bonds were paid in full. * * *"

True the authorities recognize a right to intervene in case of fraud, conspiracy or bad faith on the part of the bondholders' representative, and petitioners here apparently seek to bring themselves within the exception to the general rule by charging, in a somewhat vague fashion, that the trustees and their bondholders' committee have entered into a conspiracy with junior bondholders by which the latter are to benefit at the expense of the first mortgage bondholders. In fact, it is intimated, if not charged, that respondent is a party to such conspiracy. We find no support, however, for such a charge. The

fact that the trustees and committees have agreed to the Abbott Plan, tentatively approved by the court, furnishes no support for the charge because there is no definite showing as to the value of the property as compared with the first mortgage indebtedness. In the briefs before us, a wide divergence of views are expressed as to the value of the property and, consequently, as to whether the junior creditors are, or will be entitled to realize anything upon their claims. That, however, is a situation to be appraised by the court when and if the plan is finally approved. Petitioners rely upon the recent case of Case v. Los Angeles Lumber Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110, in support of its argument that in a reorganization proceeding junior creditors can not be assisted at the expense or detriment of prior lienors. That authority, no doubt, will be in point when the court gives final consideration to a plan of reorganization, but it has no application at the present time.

Concluding as we do, that intervention was properly denied, we do not believe there is any occasion for us to discuss or determine the propriety of the action of the court in appointing a court adviser, and certainly no reason to consider the reasonableness of the compensation fixed and being received by him.

What we have said concerning the intervention sought in connection with the court adviser, is largely applicable to petitioners' prayer for an order disapproving the sale and plan, and ordering a resale. In the first place, no demand was made in the court below for leave to intervene for such purpose, and if it had been, the court was not obliged to allow it as a matter of right.

A superficial view of the situation presented by petitioners lends color to their contention that there can be no justification for the length of time this litigation has been pending. It requires no great amount of study, however, to convince us that the unusual delay is the result of the stupendous problem with which the court and interested parties have been confronted. That respondent has applied himself to its solution with diligence and courage, the record bears witness. We find nothing to indicate, much less prove, that his purpose has been other than to do that which is best for all interested parties, and this without impairing the rights of any. We assume that all would concede that the matter should be brought to a termination at the earliest possible date. The responsibility for accomplishing that long sought result, however, devolves upon the respondent. The relief here sought, if granted, would, in all probability, serve no purpose except to add further complications to those already existing.

Petitioners' application for a writ of mandamus is denied.