CITIBANK, N. A., Plaintiff-Appellee,

v.

DATA LEASE FINANCIAL CORPORATION, Defendant-Appellant.

No. 79–1560.

United States Court of Appeals,
Fifth Circuit.
Unit B

May 18, 1981.

---

Edna L. Caruso, West Palm Beach, Fla., Robert M. Sondak, Miami, Fla., for defendant-appellant.

Smathers & Thompson, John H. Schulte, Miami, Fla., William Brooke Pennell, New York City, for plaintiff-appellee.

Before GODBOLD, Chief Judge, and TJOFLAT and VANCE, Circuit Judges.

GODBOLD, Chief Judge:

We consider in this diversity case whether an order authorizing a pre-judgment sale of collateral was a final order from which an appeal could have been taken, and we conclude that it was. We also find that the district court had jurisdiction to enter the order of sale and that the later order confirming the sale was not an abuse of discretion.

Appellee Citibank brought this action in federal court in Florida to foreclose its security interest in 870,000 shares of stock in Miami National Bank (approximately 80% of the total outstanding shares) owned by appellant Data Lease. The district court granted Citibank's motion for pre-judgment sale of the collateral based upon these determinations: that the Bank was in a seriously unsound financial condition and was drastically in need of an immediate infusion of capital; that a sale of the collateral was inevitable; that an immediate sale was in the best interests of all concerned; and that the rights of both Citibank and Data Lease were adequately protected by the order of sale. No appeal was taken from this order.

A sale was held at which Citibank, the only bidder, purchased the stock for $3,000,000. The district court confirmed the sale. Data Lease pursued this appeal from the order confirming the sale,[1] contending that the district court erred in directing sale of the collateral prior to final judgment and that the court was without power to order a sale of at least some of the stock (which Data Lease had previously been directed by a state court to convey to a third party). Citibank contends that the order directing the sale was a final, appealable order and that Data Lease cannot now challenge the propriety of that order. Alternatively Citibank argues that the order of sale was proper.

After this case was argued in this court, Citibank filed a motion to dismiss the appeal as moot on the ground that the stock has been sold to a third party. Citibank argues that because Data Lease failed to obtain a stay or supersedeas of the district court's sale and confirmation orders, Citibank was entitled to and did rely on those orders as final in selling the stock. Relying on *American Grain Association v. Lee-Vac, Ltd.*, 630 F.2d 245 (5th Cir. 1980), it asserts that the intervening rights of the third party purchaser preclude this court from granting substantial relief to Data Lease and that the appeal is therefore moot. We disagree.

█ Citibank's reliance on *Lee-Vac* is misplaced. That case was an appeal from an order in a bankruptcy proceeding governed by Rule 805 of the Rules of Bankruptcy Procedure, which provides in pertinent part that "[u]nless an order approving a sale of property . . . is stayed pending appeal, the sale to a good faith purchaser . . . shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser . . . knows of the pendency of the appeal." By contrast

the instant case is a diversity action, and the nature of the rights created by the orders of sale and confirmation is determined by the law of Florida. *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is to that law we must turn to determine whether the subsequent sale vested the third party purchaser with rights that would not be affected by a reversal of either the sale or the confirmation order.

█ Under the law of Florida a good faith purchaser at a judicial sale who is not a party to the proceedings leading up to the sale is not affected by a subsequent reversal of the order of sale on non-jurisdictional grounds. *Garvin v. Watkins*, 29 Fla. 151, 10 So. 818 (1892). A reversal of the order of sale on jurisdictional grounds will defeat the title of even such a purchaser, however. *Id.* A party or his privy who purchases at a judicial sale, on the other hand, is charged with notice of any defects in the proceedings, and his title will thus be defeated by a reversal on any ground. *Johnson v. McKinnon*, 54 Fla. 221, 45 So. 23 (1907). The effect of reversal on the title of a grantee of a party purchaser is somewhat less clear. A reversal on jurisdictional grounds defeats the grantee's title at least where the jurisdictional defect is apparent from the record or where the grantee has notice of the facts giving rise to the defect. *Klinger v. Milton Holding Co.*, 136 Fla. 50, 186 So. 526 (1939); *Smetal Corp. v. West Lake Investment Co.*, 126 Fla. 595, 172 So. 58 (1937). We have found no Florida authority indicating the effect of a reversal on non-jurisdictional grounds on the title of a party purchaser's grantee. Turning to cases from other jurisdictions, however, the clear weight of authority is that in the absence of a statute to the contrary the reversal on appeal of an order directing a sale of property defeats the title of one who obtained the property

---

1. Although Data Lease filed its notice of appeal from the confirmation order within the time allowed under F.R.A.P. 4 for filing a notice of appeal from the order of sale, the notice reads simply: "NOTICE IS HEREBY GIVEN that DATA LEASE FINANCIAL CORPORATION, hereby appeals to the United States Court of Appeals for the Fifth Circuit from the Court's Order dated February 7, 1979 confirming judicial sale." R.124. Data Lease does not contend that this should be read as designating the order authorizing the sale, entered January 29, 1979, as the order appealed from. *See* F.R.A.P. 3(c).

from a party who purchased it at the judicial sale, regardless of the ground for reversal. This rule is based upon the general principle that one ordinarily cannot convey a better title than he himself has. Because the party purchaser's title is defeasible his grantee's title is also defeasible. *See DiNola v. Allison*, 143 Cal. 106, 76 P. 976 (1904); *Marks v. Cowles*, 61 Ala. 299 (1878); and cases discussed therein. Because a reversal by this court of either of the district court's orders would defeat Citibank's purchaser's title and entitle Data Lease to possession of the stock, no aspect of this appeal is moot.

■ An order confirming a judicial sale of property is a final order from which an appeal may be taken pursuant to 28 U.S.C. § 1291.[2] *Sage v. Central R. R.*, 96 U.S. 712, 24 L.Ed. 641 (1878); *Godchaux v. Morris*, 121 F. 482 (5th Cir. 1903). *Cf. U. S. v. "A" Manufacturing Co.*, 541 F.2d 504 (5th Cir. 1976). Citibank argues that the order of sale was itself a final order and that Data Lease waived its right to challenge that order by failing to appeal from it. We directed the parties to submit supplemental briefs on this issue, and we now conclude that Citibank is correct and that we are limited to a review of the order confirming the sale and a determination whether the district court had jurisdiction to order the sale.

Data Lease contends that the order of sale was not a final order from which an immediate appeal could be taken and that the order of sale and the confirmation order, taken together, constitute a mandatory preliminary injunction appealable under 28 U.S.C. § 1292(a)(1).[3] Data Lease appears to argue in the alternative that each of the orders was a preliminary injunction appealable under § 1292(a), and it relies on the principle that a party's failure to appeal from an interlocutory order appealable as

of right under § 1292(a) does not prevent review of that order upon a later appeal. *See Caradelis v. Refineria Panama, S. A.*, 384 F.2d 589 (5th Cir. 1967); *Gloria Steamship Co. v. Smith*, 376 F.2d 46 (5th Cir. 1967); *Victor Talking Machine Co. v. George*, 105 F.2d 697 (3d Cir.), *cert. denied* 308 U.S. 611, 60 S.Ct. 176, 84 L.Ed. 511 (1939).

■ In *Ray v. Law*, 7 U.S. (3 Cranch) 179, 179–80, 2 L.Ed. 404, 404 (1805), Chief Justice Marshall stated that

[t]he act of Congress points out the mode in which we are to exercise our appellate jurisdiction, and only authorizes an appeal or writ of error on a final judgment or decree.... The Court, however, is of opinion, that a decree for a sale under a mortgage is such a final decree as may be appealed from.

Not all orders contemplating a judicial sale are final and appealable. An immediate appeal may not be taken from an order determining that, if a debt is not paid, a party has a right to sale of specified property if the order neither determined the amount of the debt nor ordered a sale, *Burlington, C. R. & N. Ry. v. Simmons*, 123 U.S. 52, 8 S.Ct. 58, 31 L.Ed. 73 (1887); from an order directing transfer of property to a receiver but not directing an immediate sale, *Grant v. Phoenix Mutual Life Ins. Co.*, 106 U.S. (16 Otto) 429, 1 S.Ct. 414, 27 L.Ed. 237 (1882); or from an order directing a sale of property but not determining the amount of an unliquidated claim or the specific property to be sold, *North Carolina R. R. v. Swasey*, 90 U.S. (23 Wall.) 405, 23 L.Ed. 136 (1875). But an order in a foreclosure proceeding that directs the immediate sale of specified property is in all respects a final order for purposes of appeal. *First National Bank v. Shedd*, 121 U.S. 74, 7 S.Ct. 807, 30 L.Ed. 877 (1887); *Sage v. Central R.*

---

**2.** 28 U.S.C. § 1291:

The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court.

**3.** 28 U.S.C. § 1292(a):

The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions ...;

R., 93 U.S. 412, 23 L.Ed. 933 (1876); *Bronson v. LaCrosse & M. R. R.,* 67 U.S. (2 Black) 524, 17 L.Ed. 359 (1863); *Whiting v. Bank of the United States,* 38 U.S. (13 Pet.) 6, 10 L.Ed. 33 (1839).

In *Whiting* heirs of the defendant in a foreclosure action brought a bill of review challenging the order of foreclosure and sale. The bill was timely if measured from the date of the confirmation order but untimely if measured from the date of the order of sale. The Court ruled that the bill could not raise asserted errors in the foreclosure proceedings because the order of foreclosure and sale was final and could be reviewed only upon an appeal from the order or by a bill of review that was timely with respect to the sale order. Later cases have consistently recognized that review of an order directing a sale of property may be had only upon an appeal taken from the order of sale and not upon an appeal from the subsequent confirmation. *See, e. g., Leadville Coal Co. v. McCreery,* 141 U.S. 475, 12 S.Ct. 28, 35 L.Ed. 824 (1891) (separate appeals taken from both orders); *Sage v. Central R. R.,* 96 U.S. 712, 24 L.Ed. 641 (1878) (separate appeals taken from both orders); *Central Trust Co. v. Peoria, D. & E. Ry.,* 118 F. 30 (7th Cir. 1902) (no appeal taken from sale order); *Chase v. Driver,* 92 F. 780 (8th Cir. 1899) (no appeal taken from either order). *Cf. U. S. v. Heasley,* 283 F.2d 422 (8th Cir. 1960) (dictum to same effect in case of sale by receiver). Data Lease cites *U. S. v. "A" Manufacturing Co., supra,* as involving review of an order of sale upon appeal from the confirmation order where no appeal was taken from the sale order, but in that case appeals were taken from both an order denying a motion to suspend the sale and the confirmation order. Moreover, *"A" Manufacturing* involved two appeals from orders in a receivership proceeding, which are governed by 28 U.S.C. § 1292(a)(2),[4] and as we have indicated, the general view is that failure to appeal an order under § 1292 does not preclude later review. Because Data Lease failed to appeal from the order of sale, which was a final order appealable under § 1291, our review is limited to determining whether the district court had jurisdiction to order a sale of the stock and whether the district judge abused his discretion in confirming the sale.

An order directing a judicial sale of property may be attacked at any time, even years after confirmation and in a separate proceeding, on the ground that the court was without jurisdiction to order the sale. *Mellen v. Moline Malleable Iron Works,* 131 U.S. 352, 9 S.Ct. 781, 33 L.Ed. 178 (1889); *Galpin v. Page,* 85 U.S. (18 Wall.) 350, 21 L.Ed. 959 (1874); *Mitchell v. St. Maxent,* 71 U.S. (4 Wall.) 237, 18 L.Ed. 326 (1866); *Milwaukee & M. R. R. v. Soutter,* 69 U.S. (2 Wall.) 609, 17 L.Ed. 886 (1865). Data Lease contends that the district court was without jurisdiction to order sale of the stock because when this action commenced Data Lease was subject to an order of a Florida state court directing specific performance of a contract to convey 217,500 of the shares to a third party, Blackhawk Heating & Plumbing Co. We reject this contention.

Where a state court has actual or constructive possession of property, whether in an action in rem or quasi in rem or in an action (such as a receivership or the administration of a trust) that necessarily involves direct exercise of the court's power over the property, a federal court as a matter of comity cannot exercise in rem jurisdiction over the same property. *Kline v. Burke Construction Co.,* 260 U.S. 226, 229, 43 S.Ct. 79, 81, 67 L.Ed. 226, 230 (1922). But where the state court action is in personam, there is no objection to the federal court's exercise of either in rem or in personam jurisdiction over an action involving the same property. *Id.* Although an action for specific performance of a contract to convey property partakes of both in rem and in personam elements, "a suit in equity to compel the specific performance of a

---

4. 28 U.S.C. § 1292(a):

> The courts of appeals shall have jurisdiction of appeals from:
>
> (2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, *such as directing sales or other disposals of property;*
>
> (Emphasis added.)

contract is essentially still a suit in person-am and not an action in rem, even though the suit is brought to compel the specific performance of a contract to convey real property." 29A Fla.Jur., *Specific Perform-ance* § 122. At the hearing on Citibank's motion for an immediate sale of the stock, counsel for Data Lease conceded that the state court proceeding was not an in rem action. (Tr. at 9). Moreover, nothing in any of the published opinions of the state courts in that action indicates that it was an in rem action. *See Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp.*, 328 So.2d 825 (Fla.1975); 302 So.2d 404 (Fla.1974); 325 So.2d 475 (Fla.App. 1975); 287 So.2d 118 (Fla.App.1973). While Data Lease might conceivably be in viola-tion of the state court's order for failure to deliver the stock to Blackhawk,[5] this would not deprive the federal court of jurisdiction in this essentially in rem proceeding.

Data Lease also challenges the confirma-tion of the sale on the ground of inadequacy of price. Citibank was the only bidder at the sale, and it purchased the stock for $3,000,000, the lowest price that the district court had indicated it would accept. In the specific performance action brought by Blackhawk in Florida state court, the court set the price for 217,500 shares at $2,600,000 less certain "cash flow benefits" that have not yet been determined. Data Lease ar-gues that this indicates that Citibank's bid was unreasonably low.

A trial court has considerable discretion in setting a minimum price for property sold at a judicial sale and in decid-ing whether to confirm a sale over an objec-tion that the price is inadequate. A sale will not be set aside for inadequacy of price in the absence of fraud, unfair conduct, or improper conduct of the sale unless the price is so low as to shock the conscience. *Ballentyne v. Smith*, 205 U.S. 285, 27 S.Ct. 527, 51 L.Ed. 803 (1907); *Graffam v. Bur-gess*, 117 U.S. 180, 6 S.Ct. 686, 29 L.Ed. 839 (1886); *U. S. v. Garcia*, 474 F.2d 1202 (5th Cir. 1973); *Weir v. U. S.*, 339 F.2d 82 (8th

Cir. 1964); *Breeding Motor Freight Lines, Inc. v. Reconstruction Finance Corp.*, 172 F.2d 416 (10th Cir.), *cert. denied* 338 U.S. 814, 70 S.Ct. 54, 94 L.Ed. 493 (1949); *Ameri-can Trading & Production Corp. v. Connor*, 109 F.2d 871 (4th Cir. 1940); *Foote v. Kan-sas City Life Ins. Co.*, 92 F.2d 744 (5th Cir. 1937); *Van Senden v. O'Brien*, 58 F.2d 689 (D.C. Cir.), *cert. denied* 287 U.S. 608, 53 S.Ct. 11, 77 L.Ed. 528 (1932); *Morrison v. Burnette*, 154 F. 617 (8th Cir. 1907), appeal dismissed sub nom. *Laurel Oil & Gas Co. v. Morrison*, 212 U.S. 291, 29 S.Ct. 394, 53 L.Ed. 517 (1939). It is enough to note that the price set in the state court litigation for 217,500 shares was based upon a contract price established more than 8 years ago and that there is ample evidence in the record that MNB at the time of sale was in a serious and declining financial condition. Data Lease has failed to sustain its burden of showing that the district court abused its discretion in determining that $3,000,000 was not a grossly inadequate price for the 870,000 shares.

The motion to dismiss the appeal as moot is DENIED and the order confirming the judicial sale is AFFIRMED.

---

**5.** In point of fact, it appears that Citibank and Blackhawk have reached an agreement where-by Blackhawk assigned its interest in the stock and the contract to convey the stock to Citi-bank, while Citibank agreed to assume any liability of Blackhawk to Data Lease for the purchase price of the stock. Tr. at 7–42, *pas-sim.*