In re PROGRESSIVE WALL PAPER CORPORATION.

(District Court, N. D. New York. April 3, 1915.)

1. **BANKRUPTCY ☞258—FORECLOSURE OF MORTGAGES—SALE FREE FROM LIENS.**
While, if the bankruptcy court can see that a sale of mortgaged property free and clear of liens and incumbrances will produce money enough to pay the mortgage bondholders in full, and can do this within a reasonable time, it is its duty to have the property so sold, so as to allow it to control the sale and fund, and pay off the liens in full, and avoid costs and expenses, where this does not appear, the court should not experiment with the property, thereby imperiling the rights of the bondholders, by delaying foreclosure and sale, and allowing their claims to increase by way of accumulated interest, in view, also, of the impairment of value by way of dilapidation and exposure to fire.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 358, 359, 362; Dec. Dig. ☞258.]

2. **MORTGAGES ☞131—PROPERTY COVERED—AFTER-ACQUIRED PROPERTY.**
If the language of a mortgage on the manufacturing plant of a corporation is broad enough and explicit enough, chattels put into the plant as a part thereof and to be used in carrying on the business, may be subjected to the lien of the mortgage, though subsequently acquired; but raw materials to be purchased and manufactured, or the goods made from such after-acquired raw materials, may not be so subjected to the lien.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 255–257, 261, 262, 265; Dec. Dig. ☞131.]

3. **BANKRUPTCY ☞258—SALE OF PROPERTY—MORTGAGE FORECLOSURE.**
Part of the real property of a bankrupt corporation was covered by an overdue mortgage, the validity of which was not questioned, but concerning which there was a dispute as to the personal property, such as tools and fixtures, covered by it. Other real property was covered by a second mortgage, but not by the first mortgage; but it was claimed that a building thereon encroached on the property covered by the first mortgage. The second mortgage was not due, and there was a dispute as to its validity and the validity of the bonds secured thereby. No party had offered for the property covered by the first mortgage the amount of the bonds with accrued interest, and, so far as appeared, no offer of any kind had been made, though the property had been in the hands of the trustee in bankruptcy for four months, and it did not appear whether the property covered by the two mortgages would sell better together or separately. *Held*, that foreclosure of the overdue mortgage would be permitted, subject, however, to the right of the trustee in bankruptcy to offer the property for sale as a whole, including all fixtures, tools, etc., before a foreclosure sale was had; the mortgaged property to be offered for sale separately, so as to fix and determine its value, and to be sold only in case it could be sold by the trustee for sufficient to pay the bonds secured by the first mortgage, with interest and costs.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 358, 359, 362; Dec. Dig. ☞258.]

4. **BANKRUPTCY ☞ 262—MORTGAGES—SALES FREE FROM LIENS.**
While there is no express authority in the bankruptcy law for a sale of real estate free and clear of liens and incumbrances, such sales may be made, and a good title is thereby given.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 363–365; Dec. Dig. ☞262.]

In Bankruptcy. In the matter of the Progressive Wall Paper Corporation, bankrupt. On application by the Adirondack Trust Com-

pany for leave to foreclose a mortgage. Application granted conditionally.

This is an application by the Adirondack Trust Company, as trustee in a certain mortgage executed by the Progressive Pulp & Paper Company, the predecessor in name and ownership of the mortgaged property (the name of the corporation having been duly changed), for leave to commence and prosecute a foreclosure of such mortgage, which was given to secure the payment of an issue of $100,000 of the bonds of said corporation issued and now due and outstanding, and on which interest for at least a year past due and payable is unpaid. The bankrupt also on the hearing favors this course. The trustee in bankruptcy, Fred H. Justin, opposes such application on the ground, principally, that there is an equity in the property, and that it is for the best interests of the general creditors to have the mortgaged property sold by the trustee, either free and clear of such mortgage lien or subject thereto. The trustee asks an order that this course be pursued.

Luther A. Wait, of Saratoga Springs, N. Y., for petitioner.
Edgar T. Brackett, of Saratoga Springs, N. Y., for bankrupt.
Weeds, Conway & Cotter, of Plattsburg, N. Y., for trustee.

RAY, District Judge (after stating the facts as above). [1] The validity of the mortgage sought to be foreclosed by the petitioner, the Adirondack Trust Company, the trustee named therein, is not questioned. The validity of the bonds issued thereunder and held by many different parties is not disputed. No person or party has come forward with an offer for this mortgaged property, or proposing or expressing a willingness to pay more therefor than the amount of such bonds and accrued interest. In fact, so far as this court is advised, no offer has been made for the property. The property has been in the hands of the trustee for about four months at this date. The bonds, with accrued interest, are in excess of $100,000. It is, of course, the duty of this court to protect the interest of general creditors, but not at the sacrifice of the rights or interests of these bondholders, whose rights were shown to general creditors by the recorded mortgage. If the court can see that a sale free and clear of liens and incumbrances will produce money enough to pay them in full, and do this within a reasonable time, it is its duty to have the property so sold, as this will allow this court to control the sale and fund, and pay off the liens in full, and avoid costs and expenses. But, if this does not appear, I doubt the right of the court to experiment with the property, and thereby to an extent imperil the rights of mortgage bondholders by delaying foreclosure and sale to be made for their benefit and allowing their claims to increase by way of accumulating interest. Then, too, comes in impairment of value by way of dilapidation and exposure to fire.

The situation is somewhat complicated, and there is a question as to what personal property is covered by the mortgage, and also other questions. It appears from the papers before the court that the bankrupt corporation was organized as a manufacturing stock corporation, about April 15, 1904, under the general laws of the state of New York. The original plant of the company consisted of a pulp mill, a paper mill, and the machinery and appurtenances connected therewith, together with a storehouse and usual outbuildings, and the real estate consisted of about 100 acres of land, including the water power on the

Saranac river used by the corporation in its operations, and this was acquired in April, 1904. Additional real estate was acquired in 1904, 1905, and again in 1906 and 1911. In 1911 a wall paper mill was erected by the company upon a tract of some 15 acres of land acquired by the company at that time. About May 1, 1904, the company mortgaged all its then owned real estate to the petitioner, the Adirondack Trust Company, to secure bonds amounting to $100,000, and this is the mortgage hereinbefore referred to. In the petition herein the mortgaged property covered by that mortgage is described in Schedule A thereof. In February, 1906, the company made a further or supplemental mortgage to the said Trust Company to secure the same bonds issued under the first mortgage and hereinbefore referred to. This supplemental mortgage covers the real property acquired by the company after the making of the first mortgage and before the execution of the second mortgage, and is described in Schedule B of the petition.

[2] It is a question in dispute whether or not these mortgages above referred to are sufficient to subject to their operation as against the trustee lands thereafter acquired, or chattels thereafter acquired and put upon the property. If the language is broad enough and explicit enough, chattels put into a manufacturing plant as a part of the plant and to be used in carrying on the business may be subjected to the lien of such mortgage, even if subsequently acquired. Not so as to raw materials to be purchased and manufactured, or the goods made from such after-acquired raw materials. This is the general rule.

About June 7, 1906, and subsequently to the execution of the said first mortgage and the supplemental mortgage above referred to, the company acquired from one Baker about one-fourth of an acre of land, and about April 1, 1911, said company acquired from one Cunningham and others a parcel of some 15 acres of land. In 1911, on these last-mentioned parcels of land, the company erected its wall paper or printing mill, and this formed a part of the plant of the company, taken as a whole, at the time of the bankruptcy of this corporation. These last-acquired parcels of land, on which was erected the wall paper or printing mill, are not claimed to be covered by the first mortgage or the said supplemental mortgage, and are not claimed to be covered by said mortgages. It is claimed, however, that this last-mentioned building was erected in such a manner and so located that it stands for some little distance on the lands included in said first mortgage.

About November 1, 1911, the now bankrupt corporation executed another mortgage to the said Adirondack Trust Company, as trustee, which covers and includes in its description, not only the property, real and personal, covered by the said first mortgage and the supplemental mortgage, but also the two parcels of land above referred to acquired after the making of the first mortgage and the supplemental mortgage. This last mortgage purports to have been given to secure an issue of 100 bonds, of $1,000 each, payable in 20 years, with interest, and which interest is payable semiannually. It is claimed that none of the bonds purporting to be secured by this last-mentioned mortgage were ever legally issued and negotiated or sold by the bankrupt, or

used in any proper manner, except that after they were formally executed by the company they were delivered at different times and in different amounts to various creditors of the bankrupt in form as collateral security for old or pre-existing debts of the company, and that that was no new consideration, or any consideration, for the issue of the bonds or their pledge, except the antecedent indebtedness of the now bankrupt corporation and an extension of time for the payment of such antecedent indebtedness. It is claimed that each and all of the persons and corporations who received and who now hold the said bonds so issued under the last mortgage mentioned held at the time the bonds were so delivered the note of the now bankrupt for the amount of the debt due from it, and that the par value of the bonds delivered to each of said creditors was equal to the principal of the note then and now held by said creditors, respectively. Some or all of the notes have been renewed from time to time. These notes were indorsed, it is alleged, by John J. Cunningham, Grenvill M. Ingelsbe, and John H. Derby, each of whom then was, and each of whom from the organization of the company had been, a director and officer of the said corporation.

It is contended that the second mortgage is invalid, and that the bonds issued and so pledged under the last-mentioned mortgage are invalid. After the execution of the first mortgage and said supplemental mortgage, the corporation purchased at least appliances for use in the operation of the mills, and which are now on hand at the mill, and this includes blocks and designs used in printing wall paper, valued by the appraisers at some $2,750, but which in the schedules are valued at $10,000.

It is claimed by the trustee that this personal property and other personal property is not subject to the lien of the said first mortgage. Just what personal property is covered by and subject to the lien of the said first mortgage and the supplemental mortgage, which is the one sought to be foreclosed, must be determined, in case of dispute, in a litigation between the Adirondack Trust Company, as trustee named in the mortgage, and the trustee in bankruptcy, acting for the general creditors. The determination of this question can be retained by this court, by selling the whole property referred to altogether, including tools, etc., but not including, of course, manufactured goods or raw materials, free and clear of all liens and incumbrances, and allowing the lien of these mortgages to attach to the proceeds of sale, and thereupon proceeding to determine who has title to the proceeds of sale. If that course is pursued, it will be necessary to sell the real estate separately from the tools and personal property of that character. In a foreclosure action, brought to foreclose the first mortgage and the supplemental mortgage, it can be determined whether this personal property referred to as tools, etc., is or is not covered by such mortgage. If the first mortgage is foreclosed, and a sale had thereunder separately and distinct from a sale of the other premises, on which was erected the building in 1911, the sale will take with it a portion of such last-mentioned building, and this will lead to complications. It is not made to appear to the court whether the prop-

erty will sell better in two parcels or altogether as one; that is, selling the original plant and premises as one parcel, and the building constructed in 1911, with the parcels of land then acquired, as another parcel. The last-mentioned mortgage is not due, and a foreclosure thereof cannot be had, and, of course, the validity of the mortgage and bonds issued thereunder cannot now be determined in a foreclosure action.

[3, 4] This court does not feel disposed to interfere with the trustee named in the first mortgage and the supplemental mortgage in proceeding to assert its rights as such by foreclosure of those mortgages, or taking both together, calling them the first mortgage. The mortgage is valid, as are the bonds, and past due. In such a foreclosure it can be determined what of the personal property is covered thereby and what is not, and a judgment therein will settle the rights of the parties therein. I think that the more appropriate place and manner for disposing of that question. The purchaser, if the property goes to a sale, will know what he is getting. This foreclosure will be permitted, however, on the condition and with the reservation that the trustee in bankruptcy will be permitted and authorized to offer for sale and sell the entire property, including all fixtures, tools, etc., but not including stock in trade, or raw materials, or manufactured goods, free and clear of all liens and incumbrances, in case he has an offer on such sale which will enable him to pay in full the bonds secured by said first mortgage, including interest thereon, and the costs incurred in such foreclosure. To this end, in so offering such property for sale as a whole, the property covered by the first mortgage, and this includes the supplemental mortgage, must be offered for sale separately, so as to fix and determine its value as distinguished from the other property, and the sale will only take place under the trustee in case such property covered by the first mortgage sells for enough to pay the said bonds issued under such first mortgage, including interest and costs in full. This sale or offer to sell will not interfere with the foreclosure proceedings, which may proceed to judgment and sale, unless prior thereto the trustee has sold the property for a sum which will enable him, under the direction of the court, to pay in full the said bonds issued under said first mortgage, including interest and costs. Sold in this way, if a sale is accomplished, the proceeds of such sale, after paying off the bonds and interest thereon just referred to, will remain in this court subject to its order, and the validity of the last mortgage referred to and of the bonds issued can be determined, and the proceeds of sale remaining disposed of accordingly.

A sale by the trustee, or an offer to sell at public auction, can be brought about on 10 days' notice, as it has been settled by the Supreme Court of the United States that 10 days' notice of a sale of real estate by a trustee in bankruptcy is all-sufficient. There is no express authority in the bankruptcy law for a sale of real estate free and clear of liens and incumbrances; but it is now settled by a long line of authorities that such sales may be made, and that good title is given. This is all that this petitioner can ask, as an order pursuant

hereto will fully protect its rights and the rights of the bondholders under the first mortgage. If the trustee in bankruptcy succeeds on a sale by him in securing money enough to pay the bonds issued under the first mortgage, including interest and costs, those bonds will be retired and the first mortgage canceled, and the other property will have been converted into money, and the rights of the various parties thereto can be determined thereafter. Of course, such a sale by the trustee must be on notice to all concerned, and will be subject to confirmation by this court.

As the bankruptcy law requires that all creditors and interested parties have at least 10 days' notice of all proposed sales of real estate, this court is of the opinion that the trustee on notice should apply for such an order as the court has indicated would be proper in the premises.

There will be an order accordingly.