**RANDOLPH v. SCRANTON, MONTROSE & BINGHAMTON R. CO.**

No. 694.

District Court, M. D. Pennsylvania.

Oct. 24, 1931.

On Rules to Show Cause March 18, 1932.

Price & Price, of Scranton, Pa., for Miners' Bank of Wilkes-Barre, Pa.

H. C. Reynolds, of Scranton, Pa., for a bondholder.

Wm. J. Fitzgerald, of Scranton, Pa., for receivers.

WATSON, District Judge.

The receivers petitioned this court for an order to sell, free and clear of all incumbrances, all of the personal property and choses in action of the Scranton, Montrose & Binghamton Railroad Company. August 31, 1931, the court granted a rule to show cause why said personal property and choses in action should not be sold, free and clear of all liens and incumbrances, returnable September 23, 1931, and directed that at that time bids be received for said property passed upon by the court and accepted or rejected. Notice of the rule was duly published and served upon the Miners' Bank of Wilkes Barre. At the request of certain prospective bidders and of one of the holders of bonds of the railroad company, the return day of the rule was continued to October 6, 1931, and again to October 20, 1931, at which time bids were received for said property. October 20, 1931, a petition was presented to this court by the Miners' Bank of Wilkes Barre, the trustee under the mortgage of the Scranton, Montrose & Binghamton Railroad Company, given to secure an issue of first mortgage sinking fund bonds, objecting to the sale of said property of the Scranton, Montrose & Binghamton Railroad Company, and asking for a rule upon the receivers to show cause why the rule granted September 23, 1931, should not be discharged, and an order made directing said receivers to disclaim title to the plant and equipment of the Scranton, Montrose & Binghamton Railroad Company, subject to the lien of the mortgage of said company as well as the property belonging to the Dalton Street Railway Company and the Northern Electric Street Railway Company, which rule was granted as prayed for and made returnable October 23, 1931.

The contention of the Miners' Bank of Wilkes Barre, petitioner, is that this court has not jurisdiction to make the order of sale, and, if it has, the making of the order would not be a proper exercise of its jurisdiction.

The Scranton, Montrose & Binghamton Railroad Company operated an electric railroad from Scranton, in Lackawanna county, to Montrose, in Susquehanna county, a distance of 46 miles; also an electric railroad from Factoryville, in Wyoming county, to Lake Winola, in Wyoming county, a distance of 4 miles. It owned that portion of the railroad from Factoryville to Montrose, a distance of 26 miles.

The railroad company was insolvent in October, 1931, and had been for some time prior thereto. It was unable to pay its employees or its debts in due course. Its railroad was dilapidated and out of repair and was being operated at a deficit. For several years it had been in default in the payment of interest on its bonds.

The receivership has lasted for one year, and the Miners' Bank of Wilkes Barre has made no move and does not now seek to foreclose its mortgage, which was dated October 1, 1919. The receivers, competent and efficient men, were appointed by this court October 31, 1930, worked diligently and conscientiously, and made every effort to operate the railroad and serve the public. May 29,

1931, the receivers reported to this court that they were without funds to pay their employees or current obligations; that the deficit was increasing, and that in their judgment a continuance of the operation would not be justified. Operation of the railroad was discontinued in July, 1931. Under such conditions, I consider it the duty of the court to order the sale of the property divested of liens. It is clear that this court has the jurisdiction and power to order such a sale. Without citing the many cases recognizing such right, I shall refer to Broadway Trust Company v. Dill, 17 F.(2d) 486 (C. C. A. 3d), appeal dismissed 274 U. S. 765, 47 S. Ct. 763, 71 L. Ed. 1334, where it was held that: "In receivership proceedings, federal court, under general equity authority, has power and jurisdiction to order a public sale of real estate, free and divested of liens, over objection of trustee under mortgage."

It follows that the order of the sale of the property by the receivers, free and clear of liens, and incumbrances, should be made, and that the petition of the Miners' Bank of Wilkes Barre should be dismissed, and the rule granted thereon discharged.

The rule to show cause granted August 31, 1931, is made absolute as of October 20, 1931, and the receivers are directed to deliver to this court the bids received by them for the property on October 20, 1931; the petition of the Miners' Bank of Wilkes Barre is dismissed; and the rule to show cause granted thereon October 20, 1931, is discharged.

Report of James J. Powell, Master.

To the Honorable the Judges of the United States Court for the Middle District of Pennsylvania:

I, the undersigned, James J. Powell, to whom, as master, the issues raised by three petitions and answers filed thereto and rules granted upon said petitions, viz.:

(A) Petition of the Northern Electric Street Railway Company and the Dalton Street Railway Company filed October 31, 1931, for a rule to show cause why the receivers, Acker et al., should not disclaim all right, title, and interest in and to the property included in schedules H, I, and J, of the appraisement of property of the Scranton, Montrose & Binghamton Railroad Company, etc.

(B) Petition of the Miners' Bank of Wilkes-Barre, filed October 28, 1931, for a preliminary restraining order upon Ira Fine and Abram Salsburg, restraining them from removing or interfering with any of the property mentioned and described in the petition, etc.

(C) Petition of Miners' Bank of Wilkes-Barre, filed November 3, 1931, for a rule to show cause why the receiver's sale, confirmed October 27, 1931, should not be set aside, and why the stock of the Lake Winola Park Company and the Lake Winola Association should not be delivered to the Miners' Bank of Wilkes-Barre, trustee, etc., were duly referred to me by order dated November 4, 1931, for the purpose of taking testimony and make report thereon, together with my findings of fact, conclusions of law, and recommendations to the court, do hereby report as follows:

The above matter was duly brought on for hearing before me on November 4, 1931, at the courthouse in the city of Scranton, Pa., and continued from time to time, and proceedings had thereon, of which stenographic notes are filed herewith.

The issues presented for determination are defined by three petitions above referred to and the answers filed by the receivers of the Scranton, Montrose & Binghamton Railroad Company.

All of which petitions were presented to the court and filed after the order of confirmation of sale, which confirmation of sale was made by Hon. Albert L. Watson on October 27, 1931.

The principal questions presented to me for determination in these proceedings are:

First. Whether the federal court has jurisdiction to make the order of sale of the personal property and choses in action of the Scranton, Montrose & Binghamton Railroad Company, free and clear of all liens and incumbrances, since the personal property and choses in action were covered by a mortgage of the said company to the Miners' Bank of Wilkes-Barre, successor to the Anthracite Savings Bank of Wilkes-Barre, trustee.

Second. Whether all of the personal property disposed of by the receivers at the sale held on October 20, 1931, was the property of the Scranton, Montrose & Binghamton Railroad Company.

Third. Whether the stock of the Lake Winola Association and the stock of the Lake Winola Park Company passed to the purchaser by virtue of the receiver's sale.

Fourth. Whether the sale of personal property was advertised and conducted in conformity with law.

Fifth. Whether Ira F. Fine, one of the receivers appointed by the court, had a legal right to bid at the receiver's sale.

### Discussion.

The matters referred to me for determination are somewhat complicated because of the opposing interests of the various corporations involved and the intimate association of each of the said corporations to the other.

It would seem at first hand that their interests were identical, but, as the matter unfolds, the Northern Electric Street Railway Company owns that part of the railway from Providence square in the city of Scranton to Chinchilla.

The Dalton Street Railway Company owns from the Scranton City Line to Factoryville, and from Factoryville to Lake Winola.

The Scranton, Montrose & Binghamton Railroad Company owned that part of the line extending from Factoryville to Montrose. It was mortgaged by the said company to the Miners' Bank of Wilkes-Barre, trustee.

This portion of the line was sold by the Miners' Bank, trustee, at public sale, to G. Tracy Rogers et al., and by them conveyed to the Scranton, Montrose & Binghamton Railroad Company.

The main contention of the Miners' Bank, trustee, is that the court is without jurisdiction to make the order of sale, and, if such jurisdiction lies in the court under the facts in this case, it would be an improper exercise of its jurisdiction.

The arguments presented by the attorneys for the Miners' Bank, trustee, were to the effect that, no matter what the federal courts have held in other jurisdictions, the federal courts never decided in a Pennsylvania case that the jurisdiction existed in the federal courts exercising jurisdiction in Pennsylvania to order a sale of personal property and choses in action, free and clear of liens and incumbrances.

The order is to sell "the personal property and choses in action of the Scranton, Montrose & Binghamton Railroad Company free and clear of all liens and encumbrances," was made by the honorable Albert Watson, September, 1931, in the face of the fact that the mortgage of the Scranton, Montrose & Binghamton Railroad Company purported to be, and under the law was, a first lien upon the personal property sold by the receivers.

An examination of the authorities discloses that the federal courts, in the exercise of its equity powers, has long since exercised the power to order trustees in bankruptcy to sell, free and clear of liens.

A court of bankruptcy may in its discretion order the trustee to sell property of the estate, free and clear from liens and incumbrances, preserving and transferring bona fide and valid liens on the property to the proceeds of the sale. In re Franklin Brewing Company (U. S. C. C. A. N. Y. 1918) 249 F. 333; In re Torchia (U. S. D. C. Pa. 1911) 185 F. 576.

Where there is no express authority in the bankruptcy law for a sale of real estate, free and clear of liens and incumbrances, such sales may be made and good title is thereby given. In re Progressive Wall Paper Corp. (U. S. D. C. N. Y. 1915) 222 F. 87; Gantt v. Jones (U. S. C. C. A. S. C. 1921) 272 F. 117; In re Keet (U. S. D. C. Pa. 1903) 128 F. 651.

Where the estate of a bankrupt includes real estate subject to the liens of valid mortgages and judgments, the court may order it sold by the trustee in bankruptcy, free from incumbrances, the liens being transferred to the proceeds of the sale, and may direct the method of sale and distribution so as to protect the rights and interests of all parties concerned. In re Leslie-Judge Co. (U. S. C. C. A. N. Y. 1921) 272 F. 886; In re Eatsum Prod. Corp. (U. S. D. C. Fla. 1923) 286 F. 447; In re Worland (U. S. D. C. Iowa 1899) 92 F. 893.

A court of bankruptcy has jurisdiction to order a sale in gross of all the assets of a bankrupt manufacturing corporation in its possession free from incumbrances, notwithstanding the corporation has given a mortgage on such assets to secure its bonds, leaving questions as to what assets are covered by mortgage to be afterwards determined. In re Shoe & Leather Reporter (C. C. A.) 129 F. 588. See, also, In re Union Trust Co., Petitioner (C. C. A.) 122 F. 937.

A court of bankruptcy has jurisdiction to order a sale of property of a bankrupt upon which a lien is asserted free from such lien, and without first determining its validity or amount. In re Loveland (U. S. C. C. A. Mass. 1907) 155 F. 838.

The court of bankruptcy has jurisdiction, by virtue of its exclusive control over the bankrupt's estate and its equity powers, to restrain mortgage creditors, for a reasonable time, from instituting foreclosure proceedings, and to order the sale of mortgaged property by the trustee in bankruptcy free from incumbrances—the mortgage liens being

transferred to the proceeds of the sale—in cases where the rights of parties are clear and special circumstances render such a course advisable, after due hearing. In re Pittelkow (U. S. D. C. Wis. 1899) 92 F. 901.

I am of the opinion that the federal court in all jurisdiction has the power to order a receiver's sale, free and clear of incumbrances, as was done in this case, and cite as authority a decision rendered in the case of J. J. Van Huffel v. Trace D. Harkelrode, Treasurer of Trumbull County, Ohio, 284 U. S. 225, 52 S. Ct. 115, 116, 76 L. Ed. 256, by the Supreme Court of the United States on December 7, 1931, in which the court, in an opinion delivered by Mr. Justice Brandeis, says:

"The present Bankruptcy Act (July 1, 1898, 30 Stat. 544, c. 541 [11 USCA § 1 et seq.]), unlike the Act of 1867, contains no provision which in terms confers upon bankruptcy courts the power to sell property of the bankrupt free from incumbrances. We think it clear that the power was granted by implication. Like power had long been exercised by federal courts sitting in equity when ordering sales by receivers or on foreclosure. First National Bank v. Shedd, 121 U. S. 74, 87, 7 S. Ct. 807, 30 L. Ed. 877; Mellen v. Moline Malleable Iron Works, 131 U. S. 352, 367, 9 S. Ct. 781, 33 L. Ed. 178.

"The lower federal courts have consistently held that the bankruptcy court possesses the power, stating that it must be implied from the general equity powers of the court and the duty imposed by section 2 of the Bankruptcy Act (11 USCA § 11) to collect, reduce to money and distribute the estates of bankrupts, and to determine controversies with relation thereto."

I am of the opinion the above-cited decision of the United States Supreme Court to be ample authority to warrant the federal court to make the order of sale of the personal property and choses in action of the Scranton, Montrose & Binghamton Railroad Company, free and clear of incumbrances, and recommend that the court should order the liens transferred to the proceeds of the sale and direct the method of distribution of the proceeds of the sale so as to protect the rights and interests of all parties concerned.

Was the Order a Proper Exercise of the Court's Discretion?

The receivers were appointed upon the 31st day of October, 1930, and continued the operation of the road until July 30, 1931, at a loss until they ceased to operate. During that time no improvements were made either to the rolling stock or equipment of the company, nor was there any money expended upon the rails or roadbeds of the company.

On November 25, 1930, service was suspended by the receivers between Nicholson and Montrose because of the physical condition of the railroad and equipment, there being no money available for necessary repairs and no apparent need for the service which would justify the expense.

Subsequently (the date not appearing in the evidence or papers filed), but prior to July 20, 1931, the service was suspended from Factoryville to Nicholson and from Factoryville to Lake Winola for the same reasons. See Receiver's Report filed May 29, 1931.

The service from Factoryville to Scranton was continued by the receivers until July 30, 1931.

The entire operation of the road by the receivers was at a loss through no fault of theirs, but because the income from the road was at all times insufficient to meet the necessary expenses of its operation.

The Scranton, Montrose & Binghamton Railroad Company was in default upon its bonds since 1924 (evidence of Gamble, page —— of testimony), so that the financial condition of the road was fully disclosed to the trustee for several years prior to the appointment of the receivers, yet, the trustee made no effort to foreclose upon its mortgage until after the sale complained of had been ordered by the court and not until October 27, 1931, the date set by the court for the confirmation of the sale.

The expenses of operation were accumulating, wages of employees were remaining unpaid, and it became necessary that the interests of all concerned should be preserved, so that the honorable Albert Watson ordered the sale complained of, and, in doing so, I am of the opinion the court exercised proper discretion.

Whether all of the personal property disposed of by the receivers at the sale held on October 20, 1931, was the property of the Scranton, Montrose & Binghamton Railroad Company.

Schedule H. Rolling Stock.

Witnesses were called and their testimony taken with reference to the ownership of the property—schedule H—and among the witnesses was R. L. Koehler, who served the railroad under its different owners from 1907 to 1930 continuously as superintendent of transportation and purchasing agent.

While Mr. Koehler was upon the witness stand the following testimony was obtained from him:

"Q. I show you what purports to be a copy of part of the inventory filed, or appraisement by the Receiver in this cause with particular reference to Schedules H. I. and J. showing property of the Receiver's of the Scranton, Montrose & Binghamton Railroad Company and call your attention particularly to cars 115, 117, 121 and 122 when and how were these cars acquired? A. 115 and 117 came on the property in 1912, 121 and 122 came on the property in 1915.

"Q. That is during the time it was operated by the Scranton & Binghamton Railroad Company? A. Yes, sir.

"Q. Not by the Northern Electric Co? A. No, sir. 116 and 118 came on the property in 1915, 120 came in 1916, 0010 came there in 1917.

"Q. The ash car? A. About in 1913."

This testimony remains uncontradicted, and, as the rolling stock or cars were purchased by and were the property of the Scranton & Binghamton Railroad Company, then by virtue of the deed of Rogers et al., who had purchased all of the rolling stock and personal property of the Scranton & Binghamton Railroad Company, the title to the said property passed to and became the property of the Scranton, Montrose & Binghamton Railroad Company.

I am of the opinion that the cars concerning which Mr. Koehler testified was the property of the Scranton, Montrose & Binghamton Railroad Company, and have heretofore held that the court had the right to make an order to sell the personal property, free and clear of incumbrances. I am of the opinion that the sale of cars Nos. 115, 117, 121, 122, 116, 118, 119, 0010, and the ash car were a proper subject of sale by the receivers.

### Schedule I. Office Equipment.

■ The uncontradicted testimony of R. L. Koehler, page 22 of the testimony, discloses that all of the property listed in schedule I, under the heading of "Office Equipment," on pages 15, 16, and 17 of the appraisement, was purchased by the Northern Electric Railroad Company and was leased by it to the Scranton, Montrose & Binghamton Railroad Company. The master finds that the title to all of the property in schedule I, pages 15, 16, and 17 of the report of the appraisers, filed May 19, 1930, with the single exception of a part of thirty-three lockers purchased by the

Scranton & Binghamton Railroad Company, is the property of the Northern Electric Railroad Company, and is not the subject of a legal sale by the receivers.

I am of the opinion that all of the property in schedule I, pages 15, 16, and 17 of the appraisers' report, filed May 19, 1931, should be returned by the receivers to the Northern Electric Railroad Company, as it is not a subject of a legal sale in this proceeding.

### Schedule J. Materials and Supplies.

■ The testimony of R. L. Koehler discloses that all of the property listed in schedule J, materials and supplies, was purchased by the Scranton, Montrose & Binghamton Railroad Company. I am of the opinion that title to all of the property listed in schedule J passed to the purchasers at the receiver's sale.

All of the property listed under schedule J, material and supplies, was purchased by the Scranton, Montrose & Binghamton Railroad Company. This is the material and supplies necessary to keep the railroad in operation, and consists of various articles necessary from time to time for the repair and replacement of parts—material necessary for improvements to railroad or repair of same.

It is true from the evidence that the amount of material in the supply room, car barns, is not equal to the amount held there prior to the acquisition of the road by the Scranton, Montrose & Binghamton Railroad Company, and it is clear that the Scranton, Montrose & Binghamton Railroad Company, since it acquired the property, did not keep as large supply of materials as its predecessor had, yet, it is also clear that title to the material and supplies of schedule J was in the Scranton, Montrose & Binghamton Railroad Company, subject to the lien of the mortgage. As we have held that the court had jurisdiction to order the sale free and clear of the lien of mortgage, then it follows that title to the material in schedule J, pages 18 and 19 of appraisement, filed May 19, 1931, passed to the purchaser, and the receivers were within their rights in selling same.

Whether the stock of the Lake Winola Association and the stock of the Lake Winola Park Company passed to the purchaser by virtue of the receiver's sale. As to the 540 shares of stock, it appears:

That the said 540 shares of stock of the Lake Winola Association were apparently issued in the name of R. W. Day and by him assigned in blank. R. W. Day was the superintendent of the Scranton, Montrose & Binghamton Railroad Company and has nev-

er laid claim to this stock in his own right. An assignment of shares of stock properly delivered amounts to a sale thereof. Act Pa. May 5, 1911, P. L. 126 (15 PS § 301 et seq.).

There can be no doubt that the mortgage covered these shares of stock, and that the assignment was made in blank for the purpose of carrying out the provisions of the mortgage.

Had the delivery been made, that would end this transaction, for the reason heretofore stated, "An assignment of a stock certificate and delivery to the proper party constitutes a sale thereof."

Delivery not having been made, the question naturally arises, Upon whom did the obligation to deliver rest? It seems to the master that it rested upon the Scranton, Montrose & Binghamton Railroad Company or its trustee, R. W. Day; he having failed to deliver the said stock duly assigned, as the Scranton, Montrose & Binghamton Railroad Company, or its trustee, R. W. Day, had undertaken to do by virtue of its mortgage with the Miners' Bank, trustee, the said company, by its receivers, cannot now expose that stock for sale to a third party. "Equity considers that done which should have been done."

The receivers were appointed for the Scranton, Montrose & Binghamton Railroad Company, and their duties were the same as the original company, and it became the duty of the receivers of the said company to deliver, when found, to the Miners' Bank, trustee, the 540 shares of the stock of the Lake Winola Association. Exposing the said shares of stock for sale was in violation of their duties and powers as receivers. Their duty to the trustee was the same as the duty of the Scranton, Montrose & Binghamton Railroad Company, which was to comply with the conditions of the mortgage and deliver the stock to it duly assigned. These shares of stock were pledged to the mortgagee for value received, and it would be inequitable and illegal to permit the Scranton, Montrose & Binghamton Railroad Company to again profit by the sale of the same shares of stock, because, after pledging them, the company had left only its equity of redemption in said shares.

I am of the opinion that the 540 shares of stock of the Lake Winola Association should be delivered to the Miners' Bank, trustee.

As to the 20 shares of the Winola Park Company.

The deed of conveyance of G. Tracy Rogers et al. to the Scranton, Montrose & Binghamton Railroad Company, 20 shares, $50 par value, of the capital stock of the Winola Park Company, was sold to the Scranton, Montrose & Binghamton Railroad Company. Recital in said deed makes these shares inter alia "being subject, however, to prior pledge thereof to certain outstanding indebtedness of the Scranton & Binghamton Railroad Company aggregating approximately $800,000.00, and the same stock was included in the coverage by mortgage of the Scranton, Montrose & Binghamton Railroad Company to the Miners Bank, Trustee, on October 1, 1919," the said stocks (including above stocks) to be delivered to the trustee with such instruments of transfer as may be necessary in the opinion of counsel satisfactory to the trustee; said shares of stock of such other corporation or corporations shall be duly assigned in blank before being pledged with the trustee.

From the evidence it appears that neither the Miners' Bank, trustee, nor the receivers have possession of this stock.

According to the evidence, the trust officer of the Miners' Bank, trustee, has never seen the stock, and the evidence of the three receivers is that neither of them have ever seen this stock.

The stock at the date of the sale was, according to the evidence, neither in the hands of the receivers nor the trustee.

The 20 shares of stock are specifically conveyed by the deed to the Scranton, Montrose & Binghamton Railroad Company and are pledged by its mortgage to the Miners' Bank, trustee.

Recital in said deed makes these shares inter alia, "being subject, however, to prior pledge thereof to certain outstanding indebtedness of the Scranton & Binghamton Railroad Company aggregating approximately $800,000.00, and the same stock was included in the coverage by mortgage of the Scranton, Montrose & Binghamton Railroad Company to the Miners Bank, Trustee, on October 1, 1919." The said stocks (including the above stocks) to be delivered to the trustee with such instruments of transfer as may be necessary in the opinion of counsel satisfactory to the trustee; said shares of stock of such other corporation or corporations shall be duly assigned in blank before being pledged with the trustee.

Section 10 of the Act of May 5, 1911, P. L. 126 (15 PS § 310), provides: "An at-

tempted transfer of title to a certificate or to the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer, and the obligation, if any, imposed by such promise shall be determined by the law governing the formation and performance of contracts."

While the master can find no case wherein this section of the act has received judicial interpretation, it appears to the master that, had proceedings been taken by the Miners' Bank, trustee, to compel the delivery according to the mortgage undertaking of the Scranton, Montrose & Binghamton Railroad Company under the above-cited section of the act, it is apparent to the master the matter should be determined "by the law governing the formation and performance of contracts," which would enforce the contract by compelling the Scranton, Montrose & Binghamton Railroad Company to assign and deliver, as it had undertaken to do, the 20 shares of stock of the Lake Winola Park Company to the Miners' Bank, trustee. The master, therefore, concludes that the stock of said Winola Park Company did not legally pass to the purchaser and should be returned to the Miners' Bank, trustee.

Whether the sale of personal property was advertised and conducted in conformity with law.

The sale was of the personal property and choses in action and was conducted after due public notice at the place designated in the notice.

There is no requirement under the law for such, being conducted at any specified county seat. That provision in the Sales Act having reference to sales of real estate.

I am of the opinion that, as to notice and place of sale, the sale was valid and in conformity with law.

██ Whether Ira C. Fine, one of the receivers appointed by the court, had a legal right to bid at the receiver's sale.

Ira Fine was one of the receivers appointed by the court for the Scranton, Montrose & Binghamton Railroad Company, and continued to act in that capacity from the date of the appointment until the sale of the personal property, October 20, 1931, and is still acting in the capacity of a receiver.

The sale by the receivers, of whom Ira Fine was one, was conducted at the Post Office building in Scranton, Lackawanna county, Pa., which building is also the building in which the federal court of this district has its offices.

The master believes it is the legal duty of the receivers to protect the property of the parties for whom he is appointed by using his very best efforts in behalf of the property and the interest involved.

The practice of permitting a receiver to be both a purchaser and a seller at his own sale should be carefully scrutinized by the court, and, unless the court is fully satisfied and convinced that by his so doing the interests of the cestui qui trustent is being better served than otherwise, the practice should be condemned, because it is open to treachery.

Without citing authorities, it is well-established law in Pennsylvania that no school director can lawfully purchase from or sell a school director, which he is serving as a member of the school board of that school district, any property or thing of value, for the very good reason that, where he buys from himself and by the same token he sells to himself, he is most likely to declare a dividend in his own favor, both as buyer and seller. The same applies to councilmen and all like officers in a fiduciary capacity in Pennsylvania.

In the instant case, Ira C. Fine, receiver, bid at the receiver's sale, and was, as I understand the evidence, the highest bidder. His bid was apparently in his own right.

The objections being made to his bid, it appears, from the evidence that the matter of his legal right to bid was objected to by James K. Peck, attorney, and his objection was brought to the attention of Hon. Albert Watson in open court, and whatever objection was made to the bid by James K. Peck, attorney, the record does not disclose, but after the appearance in open court the objection was withdrawn by him, and the bid of Ira C. Fine, he being the highest bidder, was allowed to stand.

The master finds that there was no fraud in the conduct of the sale, and, being without fraud, it should not be disturbed because one of the receivers bid at it.

I am of the opinion that the rule for an injunction and the rule to set aside the receiver's sale should be discharged.

The rule to disclaim should be modified to conform to this report; that is to say, that the receivers should disclaim all title to the 540 shares of stock of the Lake Winola Association and 20 shares of the Winola Park Company, and to the property designated in

schedule I, pages 15, 16, and 17 of the appraisers' report, filed May 19, 1931.

In all other respects the sale should be approved.

### Findings of Fact.

1. Ira C. Fine, Warren Acker, and Rex Maxey were appointed receivers for the Scranton, Montrose & Binghamton Railroad Company by Hon. Albert Watson on ———, 1930.

2. The receivers continued to operate the road at a loss until July 20, 1931, when operation of the railway was discontinued.

3. The receivers were in possession of the property of the Scranton, Montrose & Binghamton Railroad Company from ——— until the date of sale, October 23, 1931.

4. On August 31, 1931, petition by receivers for permission to sell the personal property and choses in action of the Scranton, Montrose & Binghamton Railroad Company was presented to the court.

5. All of the personal property and choses in action sold at the receiver's sale on October 23, 1931, was the property of the Scranton, Montrose & Binghamton Railroad Company, except the 540 shares of stock of the Lake Winola Association and the 20 shares of stock of the Lake Winola Park Company, and all of the property in schedule I, pages 15, 16, and 17 of the appraisers' report, filed May 19, 1931.

6. That the personal property and choses in action of the Scranton, Montrose & Binghamton Railroad Company were subject to the lien of the mortgage of the said company to the Miners' Bank of Wilkes-Barre, as trustee.

### Conclusion of Law.

That the sale by the receivers on October 23, 1931, was a valid sale of the property found to be owned by and in the possession of the Scranton, Montrose & Binghamton Railroad Company.

All of which is respectfully submitted.

James J. Powell.

### On Rules to Show Cause.

H. C. Reynolds and C. B. & J. H. Price, all of Scranton, Pa., for Miners' Bank of Wilkes Barre.

H. R. Van Deusen, of Scranton, Pa., for Northern Electric St. Ry. Co.

Kelly, Balentine, Fitzgerald & Kelly, of Scranton, Pa., for receivers.

Abram Salsburg, of Wilkes Barre, Pa., and James K. Peck, of Scranton, Pa., for Lake Winola Ass'n.

The following rules to show cause were granted in this case:

a. October 28, 1931, on petition of the Miners' Bank of Wilkes Barre, Pa., rule upon Ira C. Fine and Abram Salsburg, attorney, their agents, employees, and assigns, to show cause why they should not be enjoined from removing or interfering with any of the property mentioned or described in the petition of the Miners' Bank of Wilkes Barre, Pa., filed October 28, 1931.

b. October 31, 1931, on petition of the Northern Electric Street Railway Company and the Dalton Street Railway Company, rule upon Warren T. Acker, Ira C. Fine, D. Rexford Maxey, receivers, to show cause why they should not disclaim all right, title, and interest in and to the property included in schedules H, I, and J of the appraisement of property of the Scranton, Montrose & Binghamton Railroad Company filed in this court May 19, 1931, and why they should not return said property.

c. November 3, 1931, on petition of the Miners' Bank of Wilkes Barre, Pa., rule upon Warren T. Acker, Ira C. Fine, and D. Rexford Maxey, receivers, to show cause why the receivers' sale confirmed October 27, 1931, should not be set aside, and why the stock of the Lake Winola Park Company and Lake Winola Association should not be delivered to the Miners' Bank of Wilkes Barre, Pa., trustee.

Answers to the petitions on which the rules were granted were filed by Warren T. Acker, Ira C. Fine, and D. Rexford Maxey, receivers, and the issues raised by the petitions, rules, and answers were referred to James J. Powell, Esquire, as master, to take testimony and make report thereon, together with his findings of fact and conclusions of law, and recommendations to this court. In pursuance thereof, the master heard the testimony, made the findings of fact and conclusions of law, and made the following recommendations:

"I am of the opinion that the rule for an injunction and the rule to set aside the receiver's sale should be discharged.

"The rule to disclaim should be modified to conform to this report; that is to say, that the receivers should disclaim all title to the 540 shares of stock of the Lake Winola Association and 20 shares of the Winola Park

Company, and to the property designated in schedule I, pages 15, 16, and 17 of the appraiser's report, filed May 19, 1931."

Exceptions have been filed to the master's report by the Miners' Bank of Wilkes Barre, Pa., trustee; the Northern Electric Street Railway Company; Abram Salsburg; James J. Peck, attorney; and Warren T. Acker, Ira C. Fine, and D. Rexford Maxey, Receivers.

In disposing of the exceptions, I shall first refer to the recommendations of the master that the rule for injunction and the rule to set aside the receivers' sale should be discharged.

As to the conclusion by the master that the injunction should not issue, and that the receivers' sale should not be set aside, there is competent evidence to sustain the findings of fact by the master, and, there is no evidence of mistake on his part. The conclusions of law by the master, based upon the facts as found, necessarily follow. I find no error there. After careful examination of the testimony taken before the master, consideration of the arguments and briefs of counsel, I approve the master's findings of fact and conclusions of law, in connection with the rule for injunction and the rule to set aside the receivers' sale, and adopt the same as the findings of fact and conclusions of law of the court. I approve the opinion of the master and adopt the same as the opinion of the court. I approve the recommendation of the master that the rule for injunction be discharged, and the rule to set aside the receivers' sale be discharged.

There remains for consideration the exceptions to that part of the master's report, wherein the master recommends that: "The rule to disclaim should be modified to conform to this report, that is to say, that the Receivers should disclaim all title to the 540 shares of stock of the Lake Winola Association and 20 shares of the Winola Park Company, and to the property designated in Schedule I., pages 15, 16 and 17 of the appraiser's report, filed May 19, 1931."

The master finds that the rolling stock described in schedule H, page 14 of the appraisers' report, was the property of the Scranton, Montrose & Binghamton Railroad Company, and that the receivers should not disclaim their right, title, and interest therein and thereto; that the materials and supplies described in schedule J, page 18 of the appraisers' report, were purchased by and were the property of the Scranton, Montrose & Bing-

hamton Railroad Company, and the right, title, and interest in and to said property should not be disclaimed by the receivers; that the office equipment described in schedule I, pages 15, 16, and 17 of the appraisers' report, is the property of and belongs to the Northern Electric Railroad Company, and that the receivers should disclaim all right, title, and interest in and to the same.

There is competent evidence to support these findings. The conclusions of law by the master based on the facts as found necessarily follow. I approve this part of the opinion of the master and adopt the same as that of the court.

I cannot adopt the recommendation of the master that the receivers should disclaim all title to 540 shares of stock of the Lake Winola Association and 20 shares of the stock of the Lake Winola Park Company.

October 20, 1931, the receivers sold the personal property of the Scranton, Montrose & Binghamton Railroad Company described in schedules C to L of the appraisers' report, which included all of the right, title, and interest of the Scranton, Montrose & Binghamton Railroad Company in and to 540 shares of stock of the Lake Winola Association and 20 shares of stock of the Lake Winola Park Company. The sale by the receivers was confirmed by this court October 27, 1931, and on November 3, 1931, the Miners' Bank of Wilkes Barre, Pa., trustee, under the mortgage of the Scranton, Montrose & Binghamton Railroad Company, petitioned the court for a rule on the receivers to show cause why the receivers' sale should not be set aside, and why the stock of the Lake Winola Park Company and of the Lake Winola Association should not be delivered to the Miners' Bank of Wilkes Barre, Pa., trustee. The rule to show cause was granted.

The mortgage of the Scranton, Montrose & Binghamton Railroad Company to the Miners' Bank of Wilkes Barre, Pa., trustee, dated October 1, 1919, purports to convey to the trustee all the right, title, and interest of the Scranton, Montrose & Binghamton Railroad Company in the shares of stock of the Lake Winola Association and the Lake Winola Park Company, and the mortgage contains the following provision: "As certain of the bonds, shares of stock and property above enumerated are at present pledged as collateral security for the payment of certain obligations of the Company, the assignment thereof to the Trustee is subject to such prior pledge, although it is intended from the proceeds of

the bonds hereby secured to pay off said obligations and thus redeem and reclaim the said bonds, shares of stock and property pledged as aforesaid and to deliver same to the Trustee as further security for the payment of the bonds herein mentioned."

It appears that the parties contemplated a future delivery of the shares of stock as a pledge. The delivery was never made, and the shares of stock were never in the possession of the trustee.

 The mortgage to the Miners' Bank of Wilkes Barre, Pa., trustee, was given by the Scranton, Montrose & Binghamton Railroad Company in 1919, and has been in default for many years. The trust officer of the Miners' Bank of Wilkes Barre, Pa., testified that he knew of the appointment of the receivers about the time they were appointed, and that, subsequently, he sat in conference with them. The trustee never objected to the receivership nor to the operation of the road by the receivers, from which the receivers' expenses were incurred; nor did it make any effort to procure possession of the shares of stock until after the stock was sold, the sale confirmed, and the purchaser at the sale had sold and assigned the shares of stock to James K. Peck, attorney. There was no delivery of the stock to the Miners' Bank of Wilkes Barre, Pa., trustee, and, therefore, there was no pledge of that stock to the Miners' Bank of Wilkes Barre, Pa., trustee.

 " 'Nothing is better settled,' says one of the courts, 'than that shares in capital stock of a corporation are the subject of pledge.' It is essential, however, to a valid pledge of any species of personal property that the thing pledged should be delivered to the pledgee. 'But a pledge, in the legal sense, requires to be delivered to the pledgee. He must have possession of it. * * * In the case of stocks and other choses in action, the pledgee must have possession of the Certificate or other documentary title, with a transfer executed to himself, or in blank (unless payable to bearer), so as to give him the control and power of disposal of it.' * * * There must be a continued change of possession. Delivery, momentary possession and return are insufficient. *. * * " A pledge of stock by an instrument in writing not accompanied by a delivery of the certificate is not a pledge against third parties, nor is it good as against a judgment creditor of the pledgor. Delivery is always essential to the creation of a pledge. Thompson on Corporations (2d Ed.) Vol. 4, page 716, § 4200.

 The Miners' Bank of Wilkes Barre, Pa., trustee, contends that the stock of the Lake Winola Park Company and the Lake Winola Association were subject to the mortgage, basing its claim on the Act of June 12, 1878, P. L. 183, § 1, Purdon's Penna. Statutes Anno., title 67, § 523, page 341 (67 PS § 523). This act authorizes the mortgaging of the real and personal property of a railroad, but does not authorize the mortgaging of stocks and bonds, accounts receivable, bills receivable, cash, or other choses in action. The words "personal property" in the statute undoubtedly refer to tangible personal property, such as rolling stock, rails, etc. The courts have never decided that under this statute a mortgage could cover certificates of stock or other choses in action, for, to do so, would be contrary to the established policy of the law. It has been the fixed policy of the law in Pennsylvania and elsewhere that negotiable securities are not subject to any constructive lien, and that the possession of the certificates themselves is necessary to the creation and the continuance of a lien. Likewise, it is essential to the maintenance of a pledge that the pledgee retain possession; otherwise, if the possession is lost, the lien is lost. 21 R. C. L. 642, § 10.

The 540 shares of stock of the Lake Winola Association and the 20 shares of stock of the Lake Winola Park Company were never delivered to the Miners' Bank of Wilkes Barre, Pa., trustee, were owned and possessed by the Scranton, Montrose & Binghamton Railroad Company at the time the receivers were appointed, and the sale of said stock as sold by the receivers should not be set aside, and the receivers should not disclaim title thereto.

 The equity maxim, "Equity looks upon that as done which ought to be done," has no application here, but rather the equity maxim, "Equity aids the vigilant, not those who slumber on their rights." The trustee was guilty of laches, has presented a stale claim, and is not entitled to equitable relief. Courts should undoubtedly guard against opening doors to complainants who have been guilty of negligence in asserting their rights, and certainly after they have had actual or constructive notice of the existence of a damaging situation.

The receivers have worked diligently, conscientiously, and effectively, and have served faithfully in every way. Employees who worked on the railroad have not been paid their wages for several months. Many other

872

necessary expenses incurred in operating the road and serving the public have remained unpaid for many months. The bid of $25,000 made at the receivers' sale and accepted by the court was not only reasonable but was under all the circumstances as much or more than could be expected, and was the result of efforts on the part of the receivers. Again offering the property for sale would undoubtedly result in a much lower bid for the property, less property to sell, due to the fact that thefts of wire and other property were occurring along the abandoned railroad which, because of the expense, it was not possible to guard; and the depreciation in the value of the property. The many motions made by the trustee during the past four months have hindered the receivers in the delivery of the property sold to such an extent that delivery of all the property sold has been made impossible, and the purchaser, because of delay, has refused to accept delivery of parts of the property, and has demanded the return of over $5,000 of the amount of his bid paid to the receivers. This may, and probably will, result in a resale of some of the property at a much lower price than that obtained at the receivers' sale, and further loss to the receivership and to those who are justly deserving of payment for materials furnished and services rendered.

The exceptions to the master's report filed by the Miners' Bank of Wilkes Barre, Pa., trustee, and by the Northern Electric Street Railway Company, are dismissed; the exceptions to the master's report filed by Abram Salsburg and James K. Peck, attorney, and the exceptions to the master's report filed by Warren T. Acker, Ira C. Fine, and D. Rexford Maxey, receivers, are sustained; the rule to show cause why the restraining order granted October 28, 1931, should not be continued is discharged, and the restraining order is dismissed; the rule granted October 31, 1931, to show cause why the receivers should not disclaim all right, title, and interest in and to the property included in schedules H, I, and J of the appraisement of property of the Scranton, Montrose & Binghamton Railroad Company filed May 19, 1931, is discharged as to the property included in schedules H and J, and made absolute as to the property included in schedule I; the rule granted November 3, 1931, to show cause why the receivers' sale confirmed October 27, 1931, should not be set aside, and why the stock of the Lake Winola Park Company and the Lake Winola Association should not be delivered to the Miners' Bank of Wilkes Barre, Pa., trustee, is discharged, excepting as to the property included in schedule I of the appraisers' report, as to which property the sale thereof is set aside.

And it is further ordered that the compensation allowed to the master, as fixed by this court, shall be paid by the Miners' Bank of Wilkes Barre, Pa.